SARAH GOLINVAUX, Administratrix of the Estate of JOHN GOLINVAUX, Deceased, Appellant, v. THE BURLINGTON, CEDAR RAPIDS, AND NORTHERN RAILWAY CO., Appellee.

**Railroads:** NEGLIGENCE: EVIDENCE. In an action for a death from a
1  collision at a railroad crossing within the limits of a city, the evidence of negligence relating to obstruction of the view, absence of a flagman, high rate of speed, and failure to ring the engine bell, is considered and held sufficient to take the case to the jury.

**Contributory negligence:** EVIDENCE. It is the duty of one approach-
2  ing a railroad crossing at a place where the view is obstructed, to look and listen for a passing train. Evidence considered and held to show contributory negligence on the part of the deceased in failing to look and listen.

**Presumption of due care.** The presumption of due care on the part
3  of a person injured, arising from the instinct of self preservation, is not available where there is direct evidence of such person's conduct during the entire time he is within the zone of danger.

**Contributory negligence:** EVIDENCE. On the question of contributory
4  negligence causing death from a collision at a railroad crossing, the evidence is held to support the defendant's motion for a directed verdict.

*Appeal from Black Hawk District Court.*— HON. A. S. BLAIR, Judge.

TUESDAY, NOVEMBER 22, 1904.

ACTION at law to recover damages for the death of Joseph Golinvaux, due to his being struck by one of defend-

ant's trains at a street crossing · in the city of Waterloo.
Trial to a jury.   Verdict and judgment for the defendant,
and plaintiff appeals.— *Affirmed.*

*C. A. Irwin and Mullan & Pickett,* for appellant.

*Carroll Wright, John I. Dille,* and *Miller & Williams,*
for appellee.

DEEMER, C. J.— The deceased, while riding in a lum-
ber wagon with three other men, upon a street in the suburbs,
of the city of Waterloo, which crossed the defendant's right
of way at an acute angle — the street running north and·
south, and the right of way from the southeast to the north-
west — was struck by a train on the defendant's road run-
ning from sixty to sixty-five miles per hour, and he and two
of his companions were killed in the accident.   The triangu-
lar piece of ground to the southeast of the crossing, from
which direction the train was coming, was obstructed by
trees and buildings so as to more or less obscure the view of
trains passing over the right of way.   The horses hitched
to the wagon were either going at a fast walk or a slow jog,
as some of the witnesses say, and the men in the wagon
were intently conversing with each other from the time they
were first observed in the highway until the team had reached
or nearly reached the tracks on defendant's right of way.
It was not stopped at any time, nor did the men apparently
look or listen for the approach of trains.   The negligence
charged is failure to provide a flagman or gateman at the
crossing, failure of the operatives in charge of the engine to
ring the bell or sound the whistle for the crossing, and the
high rate of speed of the train.   Defendant denied all neg-
ligence, and pleaded contributory negligence on the part of
plaintiff's intestate.

On the issue of defendant's negligence, plaintiff relies
upon a statute which reads as follows:

A bell and steam whistle shall be placed on each locomotive engine operated on any railway, which whistle shall be twice sharply sounded at least sixty rods before a road cross

1. NEGLIGENCE: evidence.  ing is reached, and after the sounding of the whistle the bell shall be rung continuously until the crossing is passed; but at street crossings within the limits of cities or towns, the sounding of the whistle may be omitted, unless required by ordinance or resolution of the council thereof; and the company shall be liable for all damages which shall be sustained by any person by reason of such neglect.   Code, section 2072.

By its terms this statute, in so far as it requires the blowing of the whistle, does not apply to street crossings within city limits, in the absence of some ordinance or resolution on the part of the city.   There is no evidence here of any such ordinance or resolution; hence that feature is out of the case.   It does require, however, the ringing of the bell, which should be commenced when the duty to blow the whistle for other crossings would have ended — that is to say, sixty rods before the crossing is reached; and if the street crossings are less than sixty rods apart, then the bell should be rung continuously from the time the duty to ring begins down until all crossings are passed.   There was not sufficient evidence to take the case to the jury on the question of defendant's negligence in failing to keep a flagman at the crossing, although its failure to do so may be taken into account, with other circumstances, in considering the alleged negligence in running the train at a high and dangerous rate of speed over the crossing.   Again, the defendant was not responsible for the obstructions to the view of the train, and these did not in themselves constitute negligence on defendant's part; but these matters have a double aspect — first, in determining defendant's negligence in running its train in the manner it did; and, second, as bearing upon the conduct of the deceased in approaching the crossing.   Again, the high rate of speed at which the train was operated is not of itself negligence, but it, too, should be

taken into account in determining defendant's care or the want of it. Taking into consideration all the evidence in the case, the obstructions near the point of crossing, the absence of a flagman, the high rate of speed of the train, and the testimony regarding the failure to ring the bell, we are constrained to hold that there was enough testimony to take the case to the jury on the question of the defendant's negligence.

Contributory negligence of plaintiff's intestate was the point on which the case was decided and a verdict directed by the court for the defendant, and to that issue we now turn our attention. Plaintiff and his companions were seen approaching the crossing from the south something like three hundred feet therefrom. He and the men who were with him were intently engaged in conversation, and, apparently oblivious of the situation, drove up to within a few feet of the crossing, when the pace of the team was slackened somewhat, and then driven as if in an attempt to cross ahead of the train. The wagon was caught between the wheels, and three of the men were killed. Parties living on both the east and west sides of the street heard the train approaching, and noticed that plaintiff and his companions were seemingly unaware of its approach. Two or more of them whistled and hallooed to the men in the wagon, but were unable to attract their attention. They saw that a collision was imminent, for they heard the train, and could see from the actions of the men in the wagon that they did not realize the situation. Plaintiff did not stop his team from the time he was discovered approaching the crossing until he was struck, and neither he nor his companions gave any evidence that they were looking or listening for the train. · They were evidently so intently engaged in conversation that they did not hear the warnings given them by the residents of the neighborhood. Plaintiff's intestate had passed over the crossing frequently for more than twenty-five years, and

2. CONTRIBUTORY NEGLIGENCE: evidence.

knew of the obstructions to his view of the track. It was broad daylight, and there were no distracting influences to divert his attention. From the place where he was first seen down to the crossing there were at least two unobstructed views of the track. Had any of the occupants of the wagon looked at either of these places, they could have seen the train. But if the obstructions were so great as plaintiff now contends, and her intestate could not have seen the train while he was traveling something like two hundred and forty feet, it was his duty to take some precautions to ascertain if a train was coming, which might endanger him at the crossing. This he did not do. He continued on his way, which was a little down hill, without looking either to the right or to the left, and without giving any evidence that he was listening for a train. He was so absorbed that, while others heard the train, and endeavored as best they could to warn him of his danger and arrest his attention, they could not do so. This, to our minds, conclusively shows that his ears were not open to hear an approaching train. The fact that others heard the train and saw an accident impending is also quite significant. The case is within the rules announced in *Schaefert v. R. R. Co.,* 62 Iowa, 627; *Dalton v. R. R. Co.,* 104 Iowa, 26; *Moore v. R. R. Co.,* 102 Iowa, 595; *Haines v. R. R. Co.,* 41 Iowa, 231; *Banning v. R. R. Co.,* 89 Iowa, 74, and other like cases.

But plaintiff relies to some extent upon what is sometimes called the presumption arising from the instinct of self-preservation, and asks us to say that this was sufficient

3. Presumption of due care. to take the case to the jury. Had there been no eyewitnesses to the transaction, doubtless this would be true; but the conduct of the men in the wagon from the time they reached the danger zone down to the time the wagon was struck was covered by direct evidence. In such cases it is the rule of this court that this presumption or inference does not exist. The doctrine seems to be bottomed on the thought that, when there is or can be

no evidence regarding one's conduct in a place of danger, the instinct of self-preservation implanted in every human breast will raise an inference that he was not guilty of any negligence which contributed to or brought about the injury. But where there is direct evidence as to his conduct there is no room for this inference, for the reason that his conduct is to be judged from what he in fact did, rather than from an inference as to what he might have done. The entire time during which plaintiff's intestate was in the zone of danger from a passing train, during which he would naturally and reasonably have looked or listened for a train, was fully covered by direct evidence; hence there was no room for any inferences as to his conduct. *Bell v. Town of Clarion*, 113 Iowa, 126; *Burk v. Walsh*, 118 Iowa, 397; *Ames v. R. R. Co.*, 120 Iowa, 640.

There are two other important facts to be considered on this branch of the case. One is this: The railway track crosses the street at such a sharp angle that it runs almost parallel with it for quite a distance southward. A train approaching from the south at the rate of speed

**4. CONTRIBUTORY NEGLIGENCE: evidence.** this one was would naturally be heard for quite a distance by one approaching the crossing from the south. It was heard by the residents of that vicinity for a long time before it reached the crossing. The other one is that these residents, although they called, hallooed, and whistled in loud tones, could not attract the attention of the men in the wagon. For some reason the plaintiff did not call the man that was in the wagon who escaped with his life as a witness in the case. No excuse was given for not doing so, and we can only surmise as to the reason therefor. As presented to us, the evidence discloses a clear case of contributory negligence, and the motion to direct was properly sustained. Appellant's motion to strike appellee's abstract is overruled, and appellee's motion to dismiss the appeal is also overruled.

The judgment is *affirmed*.