MERCHANTS TRANSFER AND STORAGE Co., Appellant, v. CHICAGO, ROCK ISLAND & PACIFIC RY. Co., Appellee.

**RAILROADS:** Negligence—Rules Governing Employees—Admissi-
1 bility. The ''rules'' of a railroad company, adopted for the government of its employees, are not admissible in an action to recover damages on account of the negligence of the employees in backing a train upon a party at a crossing.

**TRIAL:** Instructions—Refusal of Correct Instruction—Duty of Court.
2 The better practice is for the court to formulate its own in-

structions, even though the ones requested are correct. But if those asked and refused involve questions which ought to be submitted, then the court must give an instruction embodying the thought of the ones asked and refused.

**RAILROADS: Negligence—Right of One to Presuppose Care by Another.** The right of the traveler, in approaching a railroad crossing, to assume that the railroad employees will exercise ordinary care in operating cars over the crossing is not a one-sided right. The railroad employees also have the right to assume that the traveler will exercise the same degree of care in approaching and going upon the crossing.

**RAILROADS: Negligence per se—Absence of Flagman.** Negligence *per se* cannot be predicated on the absence of a flagman at a railroad crossing situated at or near the mouth of an alley one-half block long and closed except at the crossing. Whether such omission is negligence depends on the particular circumstances of each case. In instant case, *held*, the question was properly submitted to the jury.

**RAILROADS: Negligence—Care Proportionate to Danger—Sufficiency of Instruction.** The thought ''that the care required on the part of those operating trains must bear some reasonable proportion to the known peculiar dangerous character of the particular crossing which they are approaching,'' is sufficiently embodied in an instruction (1) that it was defendant's duty not to be negligent, (2) that correctly defined negligence, and (3) directed the jury in determining the question of negligence to consider all the surrounding circumstances.

**EVIDENCE: ''No Eyewitness'' Rule—Contributory Negligence— Presumption of Care.** The full statement of the ''no eyewitness'' rule is: Where a party is dead and there is no eyewitness (and therefore no obtainable direct evidence) as to the manner in which he conducted himself at and immediately preceding the time of an injury, a presumption arises that he was exercising that care and caution that a man of ordinary prudence, judgment and discretion exercises, under like circumstances, and in relation to the same matter, unless the facts and circumstances shown upon the trial negative such presumption.

PRINCIPLE APPLIED: There were eyewitnesses to the conduct of deceased at the time of the collision.

1. An instruction asked read: ''You are instructed that in the absence of *direct evidence* as to whether he exercised proper care . . . the law presumes, etc.'' *Held*, fundamentally erroneous.

2. An instruction given read: ''You are instructed that where there are no eyewitnesses as to the manner in which plaintiff's employee, now deceased was conducting himself *at the time of the collision and at which time said damages are alleged to have been caused*, the law presumed, ·etc.''

*Held*, erroneous because (1) reasonable minds might differ and speculate as to its proper construction, and (2) it would, from its very terms, bear a construction entirely neutralizing itself, to wit:    (a)    There is no presumption that deceased was free from negligence in approaching the crossing, and (b) there is no such presumption at the time of the collision, because there were eyewitnesses at that time.

*Appeal from Polk District Court.*—HON. LAWRENCE DE GRAFF, Judge.

JANUARY 22, 1915.

REHEARING DENIED SATURDAY, MAY 15, 1915.

ACTION to recover damages for injury to property. Opinion states the facts.—*Reversed.*

*Hager & Parrish,* for appellant.

*F. W. Sargent* and *R. J. Bannister,* for appellee.

GAYNOR, J.—This is an action to recover damages for injury to personal property alleged to have been caused by the negligence of the defendant.

The place where the accident occurred was near the mouth of an alley between two streets. These streets are known as Sixth and Seventh Streets, and run north and south across the defendant's tracks. The collision which caused the injury was near the mouth of this alley. Defendant's tracks are on Vine Street. This street runs east and west immediately south of the alley, and across Sixth and Seventh Streets. This alley appears to have been vacated and closed up, both to the north and to the south of defendant's tracks, except that it was left open one-half block north from the track for the purpose of serving two warehouses, one

to the east and the other to the west of the alley. The one to the west is known in this record as the International Harvester Building, and the one to the east is known as the Davidson Building. The Davidson Building had burned down prior to this accident, but the south walls were still standing. The alley was twenty feet wide.

It appears that at the time of this accident, the defendant had placed cars south and east of the alley on one of these tracks. The west .end of the nearest car was nine feet east of the east line of the alley. The southwest corner of the west box car, from the wall of the Davidson Building, was twenty feet and six inches away. From the north side of the west car to the wall of the Davidson Building was eleven feet, ten inches. It was sixteen feet from the south line of these buildings to the center of the track on which the cars were standing. The track is four feet eight and one-half inches wide.

The track on which these cars were standing is practically parallel with the track upon which the train was being operated at the time of the injury. The evidence shows it was 7.2 feet between the tracks.

It appears that on the day of the accident, one Samuels was in charge of plaintiff's wagon and horses, and had just loaded his wagon from the door east of the Harvester Building farthest north on the alley, and was proceeding south through the alley towards defendant's tracks, and in attempting to cross the track, came in collision with a train being backed towards the west, and in this collision, the horses were badly injured, the wagon wrecked, and Samuels killed.

The acts of negligence upon which plaintiff predicated his right to recovery are:

1st. That the defendant, in backing its train towards the west and across this alley, did not keep a proper lookout, and gave no warning of the approach.

2d. That the brakeman in charge of the car at the time of the accident negligently placed himself near the southeast

corner of the car where it was impossible for him to observe the approach of plaintiff.

3d. The defendant negligently failed to have anyone stationed upon the car, or in its vicinity, to observe the approach of teams from the north, through the alley, to give warning of the approach of ·defendant's trains.

4th. The car that struck the plaintiff's team was being switched at the time, at an unnecessarily high rate of speed.

5th. That the defendant was negligent in the failure of its employees to observe certain rules which it had itself promulgated for the observance of its employees.

6th. That the defendant was negligent in placing the cars on the north side of Vine Street so as to obscure the approach of cars on its tracks.

It appears that the court, on motion of the defendant during the progress of the trial, struck out the fifth ground of negligence alleged, and withdrew it from the consideration of the jury. The court, in submitting the case to the jury, submitted only the 1st, 2d, 3d and 4th grounds of negligence above stated.

The answer of the defendant was a general denial. Cause was tried to a jury and verdict returned for the defendant, and judgment being entered upon this verdict, plaintiff appeals.

**1. RAILROADS: negligence: rules governing employees: admissibility.** It appears that upon the trial of the case the plaintiff offered in evidence defendant's book of rules and regulations, and exclusion of this is the first error assigned. These rules were promulgated by the company, and are as follows:

102. When cars are pushed by an engine (except when shifting and making up trains in yards), a flagman must take a conspicuous position on the front of the leading car.

102a. Trains or cars must not be pushed over streets, highway crossings, or street or electric railway or steam railway crossings at grade, unless a trainman is on the leading

car, or on the track or ground ahead, to see that the crossing is clear; and trains or cars shall be pushed over such crossings only on his signal.

Passenger cars in service or occupied must not be switched unless coupled to the engine and with air brakes in use.

110. Approaching or passing through stations or yards, or over railroad crossings, drawbridges, or track covered by slow orders, or on long descending grades and at other places where safety requires extra precaution, brakeman must be on top of freight trains in position to observe and assist in stopping the train should air brake failure or other emergency require. Enginemen and firemen must keep watch for signals from trainmen while passing over slow track and on freight trains, obtain a ''Proceed'' signal from the rear when the train has passed over and also after all switches or a station have been passed; this signal to be acknowledged by the whistle signal.

These rules were offered as tending to show negligence on the part of the defendant's employees in the transaction in controversy and as admissions or declarations of the defendant.

This assignment is disposed of by the former holdings of this court. See *Hart v. Cedar R. R. Co.,* 109 Iowa 631, and cases therein cited; *Blumenthal v. Electric Co.,* 129 Iowa at page 324; and *Carter v. Sioux City Service Co.,* 160 Iowa 78. These holdings rest on the proposition that the law regulates the duty of the railroad company to the public. The standard of care required is fixed by the law. The railroad company can promulgate no rules for the conduct of its servants, whether they require more or less than the law requires, and bind the public by such rules. All negligence rests upon a supposed duty that the party charged owes to the public in cases of this kind, and that is a legal duty, or a duty imposed upon it by law. The standard of care is fixed by the law. The liability rests upon the violation of the legal duty it owes to the public. If the law should require

but one lock upon a door, and the one on whom the duty of placing the lock rests should instruct his servant to place two locks, and the servant should only place one lock, the master has violated no duty that the law imposed upon him by failure of his servant to put more than one lock upon the door.

It is next alleged that the court erred in refusing certain instructions asked by the plaintiff. The rule is,—the court is not bound to submit every instruction requested, even though the instruction asked be unobjectionable in every essential particular; but if the instruction asked involves a question which ought to be submitted to the jury, the court is bound to give an instruction embodying the thought of the instruction asked, and we think the better practice is for the court to formulate the instructions itself, rather than submit the instructions as prepared by the party who requests.

2. TRIAL: instructions: refusal of correct instruction: duty of court.

Plaintiff asked the court to submit five instructions. From an examination of these five instructions and the instructions actually given by the court, it is apparent that every proposition involved in these instructions was fairly and fully submitted to the jury in the instructions given by the court on its own motion.

In construing the charge of a court to a jury, the whole charge must be considered together. Isolated sentences from one paragraph of an instruction cannot be taken as error when the instruction, considered as a whole, fairly and fully presents the law of the case.

It is complained by the plaintiff that the court refused a requested instruction to tell the jury that the plaintiff's driver, in approaching and driving upon the crossing, had a right, unless notified to the contrary, to anticipate reasonable care on the part of defendant's employees, a fact which is to be considered in determining whether the teamster exercises care in approaching and going upon the crossing.

3. RAILROADS: negligence: right of one to presuppose care by another.

The court did say ·to the jury that plaintiff's employee, in the absence of notice or knowledge to the contrary, had a right to assume that the defendant would exercise ordinary care, and the defendant, in the absence of notice or knowledge to the contrary, had a right to assume that the plaintiff's employee would exercise ordinary care.    Neither will be presumed to have had notice or knowledge of the negligence, if any, of the other in the absence of proof of such facts as show such notice or knowledge.

In *Cummings v. C. R. I. & P. Ry. Co.*, 114 Iowa 85, it is said: "While negligence on the part of the defendant will not excuse the plaintiff from exercising care on his part, he had a right to assume that the defendant would not be negligent on its part."

In *Case v.· C. G. W. Ry. Co.*, 147 Iowa 747, 751, the court in discussing this proposition said: "But one about to cross a railway track has the right to assume the trains will not be run at an unlawful rate of speed; that the usual and customary warnings will be given; and that the railway company will comply with its duty in approaching street crossings."

The converse of this proposition is true: that the railway company has a right, when approaching a public crossing, to assume that the traveler upon the highway will exercise reasonable care for his own safety, and this is the proposition as stated by the court, and the instructions, we think, cover the matter complained of.

It is further complained by the plaintiff that the question as to whether the defendant was negligent in failing to have someone stationed in the vicinity of the approaching train, to give warning of its approach, was one that should have been submitted to the jury, in view of the conditions that there existed, and argues that the court nowhere in its instructions presented this feature of the case to the jury, although requested by the plaintiff in the first·instructions asked.    The

4. Railroads: negligence. *per se:* absence of flagman.

court, however, said in its instructions to the jury that the plaintiff claims that the defendant was negligent in ''failing to have anyone stationed upon the said car, or *in the vicinity thereof to observe the approach of teams from the north,* and in giving no warning of their approach. In considering this charge of negligence, you will take into consideration the business in which the defendant was engaged; the location where the accident is alleged to have occurred, and the surroundings thereabout; the manner in which defendant moved its cars upon the track at that time and place; whether the engine bell was ringing, or other alarm given, to indicate the approach of the train; the speed at which the train was being operated; whether the defendant had a lookout on top of the car, or in such a position on the car that the plaintiff's employee could be warned of the approach of the cars and engine, and in determining this question you should take into consideration all the facts and circumstances disclosed by the evidence as tending to show whether the defendant was or was not negligent in these particulars as charged.'' The court defined negligence in its instructions (and the instructions must be read all together), ''Negligence consists in doing something, or in omitting to do something which a person of ordinary prudence or care would not have done, or would not have omitted to do, under like or similar circumstances.''

The court in this same instruction, covering this same point, said in substance: It was the duty of the defendant in the operation of the cars to exercise ordinary care. A failure on its part to exercise such care, in respect to the matters charged by the plaintiff in its petition, would constitute negligence, and you should consider the definitions of ordinary care and negligence as given in these instructions.

The court defined ordinary care as follows: ''By ordinary care is meant that degree of care which an ordinary and prudent person would exercise under the circumstances. Ordinary care consists in doing everything which a person of reasonable and ordinary care would do, or in omitting to

do everything which a person of like care and prudence would omit to do under like circumstances.''

We think the thought suggested by the requested instruction was fully covered by the instructions of the court, when considered as a whole.

The law does not enjoin upon a railroad company, at all times and all places where a public highway crosses its tracks, to maintain a flagman or to place one there to watch and observe whether persons upon the public highway are about to cross the tracks. As said in *Annaker v. C. R. I. & P. Ry. Co.*, 81 Iowa 267, 271, 3d paragraph of opinion, ''It is not negligence *per se* for a railway company to omit to keep a flagman at every street or highway crossing, at any given hour of the day or night. Whether such omission is negligence depends upon the circumstances, such as the frequency with which trains are passing, the amount of travel, the opportunities, or want of opportunities, for travelers observing the approach of trains, and the like. It is clearly a question of fact as to whether the defendant was negligent in not having a flagman at this crossing at the time of this accident, and that question was properly submitted to the jury.''

There is no evidence in this case of the amount of travel out of this alley over defendant's tracks. The necessity for a flagman at any particular crossing is not determined by the application of legal principles, but depends upon the necessity growing out of the conditions, and this is a question for the jury. See *Tierney v. C. & N. W. Ry. Co.*, 84 Iowa 641.

The absence or presence of a flagman at a public crossing is a proper question to be considered in determining whether or not the party charged with negligence acted as a reasonably prudent and cautious person would act under like circumstances, and is to be considered by the jury with all the other evidence, facts, and circumstances disclosed, in determining whether ordinary care was or was not exercised.

It is next contended by the plaintiff that in the instruc-

tion asked by it, the court was requested to say to the jury
*that the reasonable vigilance required,* on the
part of those operating trains, must bear
some reasonable proportion to the known
peculiar dangerous character of the partic-
ular crossing which they are approaching.

5. RAILROADS:
negligence:
care propor-
tionate to
danger: suffi-
ciency of
instruction.

The court in its instructions to the jury said: "It was
the duty of the defendant not to be negligent, and that negli-
gence consisted in the doing of something which an ordinarily
prudent person would not do, or the omission to do something
which an ordinarily prudent person would not omit to do
under *like circumstances, and in respect to the same matter.*

"In determining whether or not the defendant was neg-
ligent in respect to the matters charged, you will consider the
nature and character of the business in which it was engaged;
the location where the accident is alleged to have occurred,
and the *surroundings thereabouts;* the manner in which the
defendant's cars were moving at the time and place in ques-
tion; the facts and circumstances relating thereto; whether
the bell was ringing or other alarm given to indicate the
approach of the train; the speed at which the train was
being operated; whether the defendant company failed to
keep a lookout on the top of the car, in such a position on the
car, that struck the plaintiff, that plaintiff's employee could
be warned of the approach; what the employees in charge of
the train were doing, or what, in the exercise of ordinary
care, they should have been doing; what they knew, or, in
the exercise of ordinary care, should have known at the time
and place, or where, in the exercise of ordinary care they
should have been, and these, with all the other facts and cir-
cumstances disclosed by the evidence tending to show that
the defendant was, or was not, negligent, as charged by the
plaintiff in its petition."

It was the duty of the defendant in backing its train
down the street and past this alley, under the circumstances
shown in this case, to use reasonable care to keep a lookout

on the car; to observe whether teams might be driving out of the alley from the north, and to give due warning of their approach, and a failure to do so would be negligence, and the court properly said to the jury, it was for them to say whether, under all the facts and circumstances and conditions existing there, the defendant company exercised that degree of care which an ordinary careful and prudent person would exercise under like circumstances, whether it omitted to do that which an ordinary prudent person would not omit to do, or whether it did anything that an ordinary prudent person would not do in view of the conditions shown to exist at the time.

We think this fully covers the thought of the requested instruction, to wit, that the vigilance on the part of the train crew must bear a reasonable proportion to the known dangers.

As has been frequently said, words are intended to convey ideas. Scarcely any two persons will phrase the same thought in the same way, but if the thought is conveyed by the language used, if the language used properly conveys the thought desired to be expressed, it is sufficient, though perhaps another might phrase it differently, and perhaps more clearly. We cannot reverse cases on account of the phrasing of the law, if the expression used, when fairly interpreted, conveys to the jury a knowledge of the rule by which they are to be guided. Jurors are supposed to have ordinary intelligence, and ordinary experience in the affairs of life, and a reasonable knowledge of the English language and its use and the meaning of words that are in ordinary use, to which no technical signification has been given, and they are supposed to understand what is meant by "ordinary and reasonable care" when applied to the conduct of reasonable thinking human beings. When the court tells the jury that where one owes a duty not to injure another, he must use that care and caution, in view of all the facts and circumstances attending his act, which a reasonably prudent and cautious person would use under like circumstances, it must be assumed that the jury understood. It is not necessary, nor is it proper,

in addressing a jury through the instrumentality of instructions, that the court go into and define what specific acts are required of a person in any particular case, to constitute ordinary and reasonable care. Nor is it proper for the court to say to the jury what specific acts of omission or commission constitute the care which a reasonably prudent person would exercise under any given set of circumstances. The court in its instructions to the jury, we think, placed before them, not in the words in which it was asked by the counsel for plaintiff, but in its own words, the thought that in judging of the care used by either party to this unfortunate transaction, the care used, to be reasonable, should be in proportion to the danger to be anticipated.

While a party is required, under the law, to exercise reasonable care and caution for the safety of another, the care and caution used, to be reasonable, must be such as a reasonable and prudent and cautious man would exercise under like circumstances, and in relation to the same matter. What would be reasonable care and caution under one set of circumstances might be gross negligence under a different set of circumstances. The question is ultimately for the jury whether, under all the facts and circumstances disclosed, the party charged with negligence did or did not exercise that care and caution which a reasonably prudent and cautious man should exercise under conditions attending and surrounding his act. We think this question has been fairly discussed in *Gray v. Ry. Co.*, 160 Iowa 1.

The last question contended for by counsel for the plaintiff as a ground for reversal is that the court refused to give an instruction asked by the plaintiff, in which the plaintiff claims to have correctly expressed the law as 6. EVIDENCE: "no eyewitness rule": contributory negligence: presumption of care. to the presumption that exists, in the absence of an eyewitness, on the question of the contributory negligence of the plaintiff. The instruction asked by the plaintiff is as follows: "Upon the question of the contributory negligence of

the plaintiff's teamster, Samuels, you are instructed that in the absence of direct evidence as to whether he exercised proper *care in approaching and going upon said crossing,* the law presumes that he exercised such care and caution as men of ordinary prudence, judgment and discretion exercised under like circumstances, and in relation to such matters, unless the facts and circumstances shown upon the trial negative such presumptions; and you will indulge in such presumption in his favor unless the facts and circumstances shown on the trial negative such presumptions.''

The instruction given by the court on its own motion reads: ''In this connection and as bearing upon the question of the contributory negligence, if any, of the plaintiff's employees, you are instructed that where there are no eyewitnesses as to the manner in which plaintiff's employee, now deceased, was conducting himself at the *time of the collision and at which time said damages are alleged to have been caused,* the law presumes that he was exercising such care and caution as men of ordinary prudence, judgment, and discretion exercise, under like circumstances, and in relation to the same matters, unless the facts and circumstances shown upon the trial negative such presumption; and you should indulge in such presumption in his favor, unless the facts and circumstances developed on the trial negative such presumption.''

The plaintiff has italicized the portion of the instruction asked which he claims expresses the law, and has italicized the portion in the construction given by the court, on its own motion, which he claims incorrectly expresses the law.

The instruction, as asked by the plaintiff, does not express the law as we understand it. The instruction asked says that in the absence of *direct evidence* as to whether he exercised proper care, the law presumes, etc. The law is that, where the party is shown to be dead, and there is no *eyewitness* to the manner in which he conducted himself at the time of the injury, a presumption arises that he was

exercising that care and caution that a man of ordinary prudence, judgment, and discretion exercises, under like circumstances, and in relation to the same matter, unless the facts and circumstances shown upon the trial negative such presumption. The instruction asked did not properly present the law.

The true rule is that, in the absence of an eyewitness, in the absence of any obtainable direct evidence as to what deceased did or failed to do by way of precaution at and immediately before the injury, the presumption that he, prompted by a natural instinct, was in the exercise of care for his own safety, obtains and this presumption is one of fact, and whether it is overcome by circumstances shown in evidence is for the jury to determine. But there is no presumption of law under these circumstances that one is exercising reasonable care for his own safety at any particular time. It is simply an inference from the observed fact that men usually and ordinarily do exercise care for their own safety.

The rule in this state has been and is that the burden of proof in cases of this kind rests upon the plaintiff to show that he did not, by his own negligence, contribute in any way to the injuries of which he complains, or to the conditions out of which the injury arose. The presumption is of fact. It is an inference of fact rather, drawn from the known and recognized fact that the instinct of self-preservation implanted in man, and, in fact, in all animal life, prompts them to avoid injury. As has been frequently said, "Self-preservation is the first law of nature." But experience shows that men do negligently and carelessly expose themselves to hazards and dangers. Therefore, this presumption that they did not is a rebuttable presumption. See *Golinvaux v. Ry. Co.*, 125 Iowa 652; *Sanderson v. C. M. & St. P. Ry.*, 167 Iowa 90. This presumption does not obtain where there is direct evidence in the case as to how the deceased was conducting himself at the time of the injury. The

jury is permitted to indulge in such inference of fact where there is no eyewitness to the transaction involving the conduct of the complaining party.

It would be improper for the court to say to the jury that if there is no *direct evidence* in the case as to how the party was conducting himself, they should indulge in the presumption that he was exercising reasonable care.   Such a rule, if allowed, would be applicable in every case where the party having the burden of proof, on the question of contributory negligence, failed to introduce any direct testimony as to how the party injured was conducting himself at the time of the injury.   Of course, if there is direct evidence as to how he was conducting himself, the presumption does not obtain, but the converse is not true that, if there is no direct evidence as to how he was conducting himself, the presumption does obtain.   The burden being on the complaining party to prove freedom from contributory negligence, the absence of *direct evidence* as to how he was conducting himself does not raise the presumption in his favor, unless it appears that there was no eyewitness to the transaction, and, therefore, no obtainable direct evidence as to how he was conducting himself.

We think there was no error in refusing to give the instruction asked.

We come now to consider the instruction given.   Does it correctly express the law?   Does it give the jury fully the true rule by which it must be guided in determining the question of contributory negligence on the part of the deceased?

The burden of proof was on the plaintiff to show that the deceased was free from any negligence contributing to the injuries, and the conditions out of which the injuries arose. This the court emphasized in the instructions given to the jury.   The court said to the jury that, in determining whether or not the plaintiff was guilty of contributory negligence, they should consider whether or not he looked and

listened for any approaching train before attempting to cross the track; whether or not, if he had looked and listened, he could have seen the oncoming engine and cars approaching from the east. They should consider the distance that the approaching train could be seen from the point where plaintiff was, at or about the time of its approach; whether the plaintiff's employee saw it or, in the exercise of ordinary care, should have seen the engine approaching from the east at the time; what the plaintiff knew of and concerning the movement of the engine before attempting to go upon the track. The court said to the jury that a view of a railway track conveys notice of danger, and that, as he approached it, it was his duty to use his senses of sight and hearing to guard himself from harm, and if the use of his senses of sight and hearing was interfered with by obstructions or noise, reasonable care called for proportionately increased vigilance on his part before going upon the track, and further said to the jury that no reliance on the exercise of care by persons in control of the train in respect to keeping a lookout along the track, or on top of the moving train, would excuse any lack of exercise of care on the part of the driver in looking and listening to ascertain if a train was approaching from the east, and that, if there were obstructions to his view as he approached the train, the duty of watchfulness for his own safety was proportionately increased. These instructions to the jury emphasized the error in the instruction touching the conduct of the deceased of which complaint is made.

It may be, and often is, true that at the time of the collision, at the time the damages were caused, the party is using all his powers, exercising the highest degree of effort and care to extricate himself from the predicament in which he finds himself, and the evidence might disclose that, at the time of the collision, and at the time the damages were caused, he was exercising the highest degree of care and effort to avoid the collision and the damages incident to the collision;

but it might also appear—and this would defeat recovery—
that in approaching the point of collision, and in what pre-
ceded and led up to, and brought about the condition in
which he found himself, at the time of the collision, he failed
to exercise that care and caution which a reasonably prudent
man would exercise for his own safety.  He might have been
grossly negligent in approaching the point of collision, and
in placing himself in the situation from which no amount of
vigilance then could extricate him.   The burden of proof
being on him to show freedom from negligence contributing
to his injuries, it was necessary that it should appear, not
only that he was not guilty of negligence at the time of the
collision, but that he was not negligent in bringing about
the conditions which made the collision possible.  The court
said to the jury that, where there are no eyewitnesses as to
the manner in which the plaintiff's employee was conducting
himself *at the time of the collision,* and at which time said
damages are alleged to have been caused, the law presumes
that he was exercising such care and caution as men of ordi-
nary prudence, judgment, and discretion exercise under like
circumstances, and in relation to the same matter.

There is direct evidence, evidence of eyewitnesses, as to
how the deceased was conducting himself at the time and
immediately before the collision, but the jury could have well
found that, at the time, no effort on his part could have
extricated him from the then situation; that at that time
the collision was inevitable, could not be avoided.  The pre-
sumption that he was free from negligence is confined by the
instruction to the absence of eyewitnesses at the time of the
collision.   There being eyewitnesses at the time of the colli-
sion, then, under this instruction, there was no presumption
in his favor, although dead, that he was free from negligence
contributing to his injury.  There was no eyewitness of the
manner in which he approached the point of collision, no
eyewitness as to whether he looked and listened for the
approaching train.   There being no direct evidence as to his

conduct leading up to the collision, and, under this instruction, no presumption that he was exercising care in approaching the point of collision, the jury might have reasoned as follows: At the time of the collision, there is no presumption that he was exercising due care for his safety, because there were eyewitnesses to his conduct at that time. The evidence offered and submitted on this point, we think, sustains the proposition that he was exercising all the care that he could exercise at that time. But there is no evidence offered by the plaintiff as to the conduct of the deceased prior to and leading up to the point of collision. There is no presumption that he was free from negligence, under this instruction, in approaching the point of collision. There being no presumption that in approaching he was free from negligence, and no evidence that he was free from negligence in approaching, and the burden being on him to show this, we cannot find, as a matter of fact, that in approaching the point of collision, in putting himself in a position that made the collision possible and inevitable, he was exercising reasonable care for his own safety, and this defeats his right to recover.

It is further true that, even in the absence of eyewitnesses, the facts and circumstances disclosed may absolutely negative and destroy any presumption of care on his part; that is to say, if it should appear from the facts and circumstances disclosed that, if the plaintiff had exercised that care for his own safety which the law requires, he could and would have discovered the approaching train in time to have avoided the injury by the exercise of proper care.

In considering instructions for the purpose of determining whether or not they correctly and fully express the law and give the jury a true rule to guide them in determining the issues, we must consider all the instructions, and when considered from that viewpoint, if the instruction complained of does not state the correct rule for their guidance, or leaves it open for speculation and argument as to what

the true rule is, it is bad; or, where it is apparent that reasonable minds might differ in the reading of the instruction as to what the rule attempted to be expressed is, or where it is susceptible of one construction consistent with the law and another construction which does not express the law, it is bad, for we cannot say which construction the jury placed upon it. We cannot say which line of reasoning suggested by the instruction the jury followed in determining the questions at issue. Such an instruction is essentially dangerous as a guide to the jury, and, therefore, not to be approved.

We think the court erred in this instruction touching the presumption, in limiting the presumption to the time of the collision. For this error, the case must be—*Reversed*.

DEEMER, C. J., LADD and SALINGER, JJ., concur.