IDA LINDLOFF, Administratrix, Appellant, v. A. F. DUECKER, Appellee.

No. 42177.

DECEMBER 12, 1933.

H. H. Uhlenhopp, for appellant.

Senneff, Bliss & Senneff, for appellee.

KINTZINGER, J.—The unfortunate accident occurred on a paved highway known as Primary No. 10 running east and west through Franklin county, Iowa. The highway at the place of the accident is eighteen feet, 3 inches wide, and has a level dirt shoulder on each side of the pavement about six feet wide. There are two black lines

in the center of the pavement. Between the outer edges of these lines is twenty-two inches, and between the inner edges the clear space is ten inches.

The accident happened about seven p. m. on December 12, 1931, at a point on the highway about 1,500 feet easterly of plaintiff's home. It was a clear night. After leaving his home that night, he walked easterly on the pavement, on his way to the town of Latimer. He was struck and killed by defendant's car on the pavement about 1,500 feet east of his home. Decedent's home was on a knoll adjoining the road. The roadway at the place in question was straight and clear for a distance of 1,500 feet westerly of the point of the accident and for a distance of one-half mile easterly of the point of the accident, and it was a bright clear night.

At the time he entered the pavement there were apparently no cars in sight. Decedent was apparently walking in the center of the pavement between the two black lines. Before he was struck, two cars were approaching him. One, known as the Erickson car, was traveling east on the south side of the pavement, and the other, being defendant's car, was traveling west on the north side of the pavement. Both were traveling about 45 or 50 miles an hour. The view for a half mile east of the point of the accident was clear and unobstructed, and the same was true as to the view to the west of the point of collision, for 1,600 feet. The lights on both cars were in good condition, and decedent was in plain view of the drivers of both cars. The lights of defendant's car could be seen for a half mile east of the place of the accident, from the road on top of the hill adjoining decedent's home.

The occupants of the Erickson car were the only persons who saw the decedent walking on the roadway. They first saw him after they left the top of the hill, and while traveling toward the point of the accident. The headlights on the Erickson car were lit and revealed the decedent to them as he was walking in the center of the roadway about two or three hundred feet ahead of them. From the time they first saw him until they passed him, he was at all times walking between the two black lines in the center of the pavement, facing east. The light from the Erickson car was thrown around and ahead of the decedent. About the same time the Ericksons first saw the decedent on the pavement, they also noticed the defendant's car approaching on the north lane of the pavement from the east. The lights of defendant's car were burning brightly.

As the Erickson car approached decedent from the rear, he continued to walk straight ahead in the center of the paving. The driver of the Erickson car was afraid that he might strike him, and remarked that the other man might get him. During the two or three hundred feet they traveled before passing decedent, he was facing east, looking straight ahead, and never turned around. The decedent wore blue overalls. The decedent remained on and was walking between the black lines on the pavement as the Erickson car passed him. The cars, in passing each other, reached the decedent at about the same time, and defendant's car struck him. The decedent was about 56 years old, in normal health, with good eyesight and hearing.

Both shoulders of the road were even with the surface of the adjacent paving, and afforded a smooth, level place to walk. There was no snow on the ground and the road was clear. The testimony tends to show that the defendant was blinded by the oncoming lights of the Erickson car, and did not see the decedent until after he got beyond the glare of the lights on the Erickson car. It was then too late for him to avoid striking him.

At the close of the evidence the defendant filed a motion for a directed verdict on the grounds: (1) That plaintiff failed to establish defendant's negligence; and (2) that plaintiff failed to show decedent's freedom from contributory negligence.

It may be conceded that the defendant was guilty of negligence, among others, in failing to have his car under control while approaching a pedestrian, and in failing to bring his car to a stop within the assured clear distance ahead. It will therefore only be necessary to consider the question of decedent's contributory negligence.

I. It is contended by appellee that the decedent was guilty of contributory negligence in walking between the black lines in the center of the pavement, with the apparent knowledge that he would be placed in a position between the two swift moving on-coming cars as they passed each other. Appellant contends that the two black lines were placed in the middle of the pavement for the purpose of requiring the driver in each lane to keep on his side of the line, and that if each car did so he would have been in a place of safety. The clear distance between the two lines is shown to be only ten inches. It is true that a pedestrian has the same right on a pavement as an automobile, subject to the quali-

fication that the pedestrian can step aside quicker than a car. It is also true, however, that the two black lines were not placed in the highway for the purpose of affording a pedestrian a place to walk. On the contrary, it is a matter of common knowledge that these lines are placed there for the purpose of guiding automobile traffic on the pavement, and to assist them in more readily keeping on their right side of the road. It is also a matter of common knowledge that although there is no statute restricting a pedestrian thereto, the safest place for a pedestrian to travel is near the extreme edge of his left side, facing the on-coming traffic. In traveling along the pavement at that point, he will be exposed to less danger than any other. While traveling along the left edge of the pavement, facing the on-coming traffic, he can reasonably assume that he will not be run into from the rear, because cars traveling in the same direction are required to and ordinarily do travel on the right side of the road. Although he is not required to travel on the left edge of the paving, and although he has a right to travel on any other part of the paving, he is necessarily exposed to more danger in so doing. As a result of a pedestrian's failure to travel on the left side of the paving, the exercise of ordinary care on his part would necessarily require him to use more care for his own protection than if traveling on the left edge. In traveling on the right side of the pavement it is the duty of a pedestrian to protect himself from the rear by looking backwards, and although this added care would be required when traveling on the right edge of the pavement, it would be safer to travel there than in the center of the pavement. By traveling in the center of the pavement he is necessarily exposed to traffic from both directions, and the exercise of ordinary care would therefore require him to protect himself from the rear as well as the front.

Under the rules of law in this class of cases the burden is upon the plaintiff to show that the decedent was in the exercise of ordinary care. Did the plaintiff in this case meet that burden?

Plaintiff claimed that he is entitled to the benefit of the "presumption" that he was exercising ordinary care for his protection in the absence of eyewitnesses of the actual collision. There is, however, evidence of his actions in the record prior and up to the actual impact. In addition, there was also evidence of physical facts tending to show his actions at that time. There were eyewit-

nesses as to these matters up to and including the time the decedent was struck.

Where there is evidence of what the decedent was doing immediately prior and up to the time of the accident, the "no eyewitness" rule does not apply. The witnesses in the Erickson car saw and observed the decedent as they approached and passed him. They observed him through the front, side, and rear side windows of their car. While the defendant may not have seen the decedent prior to the time he met the Erickson car, he saw him as soon as his car emerged from the glaring lights of the Erickson car. This must have occurred when the front of both cars were opposite of each other. That must have been prior to or at the very time that the decedent was last seen by the witnesses in the Erickson car. At that time the defendant said it was too late for him to stop. There were therefore eyewitnesses of decedent's actions for a distance of two or three hundred feet west of the point of the accident, continuously until the accident happened.

Under such circumstances the "no eyewitness rule" does not apply. The reason for the rule which has been frequently discussed by this court is absent, and therefore the rule itself does not apply. Ames v. Waterloo & Cedar Falls R. T. Co., 120 Iowa 640, 95 N. W. 161; Kessel v. Hunt, 215 Iowa 117, 244 N. W. 714; Greenleaf v. I. C. R. Co., 29 Iowa 14, 4 Am. Rep. 181; Merchants Transfer & Storage Co. v. C., R. I. & P. R. Co., 170 Iowa 378, 150 N. W. 720; Sanderson v. Ry. Co., 167 Iowa 90, 149 N. W. 188; Stark v. Ry. Co., 161 Iowa 393, 142 N. W. 977; Brown v. McAdoo, 195 Iowa 286, 188 N. W. 7; Burk v. Walsh & Oltrogge, 118 Iowa 397, 92 N. W. 65; Golinvaux v. Ry. Co., 125 Iowa 652, 101 N. W. 465.

In Ames v. Waterloo & C. F. R. T. Co., 120 Iowa 640, loc. cit. 646, 95 N. W. 161, 162, we said:

"Where there is direct evidence as to the circumstances of the accident, the presumption is not to be entertained."

In Golinvaux v. Ry. Co., 125 Iowa 652, 101 N. W. 465, we said:

"Where there is direct evidence as to his conduct there is no room for this inference for the reason that his conduct is to be judged from what he in fact did, *rather than from an inference as to what he might have done.*" (Italics ours.)

In Kessel v. Hunt, 215 Iowa 117, loc. cit. 126, 244 N. W. 714,

718, we said: "It was also urged, in favor of the motion, that the court should have instructed the jury to the effect that the decedent was presumed to have been exercising ordinary care on the theory that there were no eyewitnesses to the accident. We think the court properly ruled on this subject. There were eyewitnesses to the accident, and these were called as witnesses by the plaintiff."

In Sanderson v. Ry. Co., 167 Iowa 90, loc. cit. 101, 149 N. W. 188, 192, we said:

"A jury ought not to be turned loose in the field of speculation, and guess as to what the facts are and surely, where they are living witnesses, by whom facts could be proved, if they existed, and they are not called, and no reason given for not calling them, where it does not appear that they are not within easy reach of the person having the burden of proof as to the fact, the field of speculation and inference ought to be closed."

It is also the law that the "no eyewitness" rule does not apply in cases where the physical facts disclose the acts and conduct of the deceased up to the time of the accident. Oaks v. Ry. Co., 174 Iowa 648, 156 N. W. 740; Sohl v. Ry. Co., 183 Iowa 616, 167 N. W. 529; Van Gorden v. Ft. Dodge, 216 Iowa 209, 245 N. W. 736.

In the first place, it must be assumed that the decedent knew that the Erickson car was approaching him from the rear, because, when that car came within two or three hundred feet of him, its lights shone down the road, covered him, and were thrown ahead of him. The Erickson car was visible from the scene of the accident for a distance of 1,500 feet westerly. If he had looked to his rear, he must have seen the Erickson car at some point within that distance. During the time decedent was walking toward the scene of the accident, *the defendant's car could also be seen for a half mile beyond the scene of the accident.* That the decedent must have known that the Erickson car was behind him is also indicated by the fact that he maintained his position between the two black lines in the center of the roadway. He continued right on toward the place where, in the exercise of ordinary care, he must have known the two cars would meet as they passed each other. If the decedent had not known of the approaching Erickson car, he would in all probability have stepped to his right to avoid the danger of being struck by defendant's car. A pedestrian is at all times required to exercise ordinary care for his own safety. He may assume that persons ap-

proaching him from either direction will not violate the law and will exercise ordinary care in keeping a lookout for him. This, however, does not relieve him from the duty of keeping a reasonable lookout, for his own safety, for vehicles approaching him from the rear as well as from the front. The pedestrian must exercise the ordinary care for his own safety which an ordinarily prudent person would exercise to avoid danger. We have held that a pedestrian walking along his left side of the road is not bound to anticipate the approach of an automobile from the rear, or on the wrong side of the road which it was not expected to use. In such cases he is not under obligations to keep a constant lookout behind. Pixler v. Clemens, 195 Iowa 529, 191 N. W. 375.

In Kessel v. Hunt, 215 Iowa 117, loc. cit. 120, 244 N. W. 714, 715, in discussing the question of care to be exercised by a pedestrian while walking on a paved road, we said:

"It is quite universally accepted at the present date that the left side of the street is the safer side for a pedestrian. By putting himself close to the left edge of the pavement the pedestrian faces all traffic without the inconvenience of looking around. Nevertheless the pedestrian is not bound to adopt such a course. He may walk on the right side, if he will. His duty, on whichever side of the street he walks, is to use ordinary care in the situation in which he puts himself and under all the circumstances surrounding him. 'Ordinary care' is the legal standard. But we have also held that the degree of caution which constitutes ordinary care varies with the circumstances; that the greater the apparent danger, the greater the degree of caution, which constitutes ordinary care. In other words, 'ordinary care' may expand or contract according to the circumstances in which the actor finds himself."

It is also claimed by appellant that the decedent was not bound to walk on either side of the pavement, but if he chose so to do, he might walk in the center of the pavement. It is generally recognized, however, that it is safer to walk on the left side of the pavement, so as to face the traffic from the opposite direction. This is indicated by legislation already adopted in several states, requiring pedestrians to walk on the left edge of the paving. Mississippi Code 1930, section 5574; Wisconsin Stat. 1929, section 85.44 subd. 6; California Vehicle Act (St. 1929, p. 546), section 150½; Arkansas State Highway Commission Rules, section 68; North Carolina State High-

way Ordinances, sections 29 and 30. These statutes are of a similar nature to that in Wisconsin, which provides as follows:

"Sec. 85.44, subd. 6. Pedestrians using those highways not provided with sidewalks shall travel on and along the left side of such highway and the pedestrian, upon meeting a vehicle shall, if practicable, step off the traveled roadway."

In Fahey v. Madden, 58 Cal. App. 537, 209 P. 41, 42, the court said:

"Indeed, there is room for the opinion that 'it is safer,' in the language of respondent, 'to walk along the highway on the side of the road facing the oncoming traffic rather than take the chance of walking on the opposite side and of being struck by unseen automobiles from behind.' It is further declared that the soldiers of the United States army, when not marching in formation, are required to walk on the side of the road facing the oncoming traffic."

In Schmeiske v. Laubin, 109 Conn. 206, 145 A. 890, 891, the court said:

"It is still true, as the plaintiff claims, that, in the absence of controlling legislation, a pedestrian has the right to walk, dressed in dark clothing, along a dark road, with his back to approaching traffic, but if he does so he is bound to exercise care proportionate to the danger inherent in such an undertaking. Obviously he is in a position of greater danger than if he were walking upon the shoulder of the road where automobiles would not be expected to be traveling, and he is bound to take some precautions for his own safety."

The exercise of ordinary care on the part of a pedestrian traveling along the highway should require him to take some action to guard against being placed in a position on the highway between two swift moving automobiles traveling in opposite directions, at the very time they are passing each other; especially on an 18-foot pavement, used by cars traveling in both directions.

The decedent lived on property adjoining the highway in question, and must have been familiar with it. The undisputed evidence shows there was ample room for pedestrians to walk on the shoulder at either side of the highway. The exercise of ordinary care on decedent's part, as he was walking easterly on the roadway between

his home and the point of collision, should have required him to look behind, especially when he must have known a car was approaching him from the rear. If he had looked to his rear, he could have seen that the Erickson car and the defendant's car were both traveling at the same rate of speed. When the Erickson car was over 200 feet west of the decedent, the defendant's car must have been over 200 feet east of the point of the collision. By the most casual observation decedent would have known that by continuing in the center of the roadway these cars would probably meet and pass each other at a time when he might be caught in the extremely hazardous position of being between two fast moving cars as they were passing each other.

Several ways were open for decedent to avoid such a dilemma. One was to step over to the right side of the road, from where he could step off the pavement to the right shoulder; another was to step over to the left side of the pavement, from where he could step to the left shoulder; or he could remain in the center of the road and take a chance of not being hit. It is a well-settled rule of law that where a person has two or more places in which to walk, one of which is dangerous, and where in the exercise of ordinary care it would be known to be unsafe, and where another road is safe, he is guilty of contributory negligence if he voluntarily chooses the unsafe course.

"Where a person voluntarily elects to travel along a route which he knows to be unsafe or obviously dangerous, with knowledge of another safe and convenient way, he thereby assumes the risk of the chosen way, and if injured while traveling thereon is guilty of contributory negligence precluding a recovery." 43 C. J. 1090, section 1856; McQuillin on Municipal Corp. (2d Ed.) 281; Cratty v. Oskaloosa, 191 Iowa 282, 182 N. W. 208; Plantz v. Kreutzer & Wasem, 175 Iowa 562, 154 N. W. 785; Hartman v. City of Muscatine, 70 Iowa 511, 30 N. W. 859; Parkhill v. Town of Brighton, 61 Iowa 103, 15 N. W. 853; McGinty v. Keokuk, 66 Iowa 725, 24 N. W. 506; Gibson v. City of Denison, 153 Iowa 320, 133 N. W. 712, 38 L. R. A. (N. S.) 644; Burnett v. Ry. Co., 172 Iowa 704, 154 N. W. 919.

The dictates of common prudence would suggest to a pedestrian walking between the center lines of the pavement the advisability of looking back. The evidence shows that he did not look

toward the rear from the time he was two or three hundred feet in front of the Erickson car. If he had looked at that time, he must have seen the Erickson car approaching from the rear. In such event he should have taken some precaution to avoid the danger of being caught between the two cars as they passed each other. If he did not look then he also failed to take the necessary precautions against being placed in the hazardous situation in which he later found himself. We think it is a matter of common knowledge that it is hazardous undertaking for a pedestrian clad in dark clothes, without a light or lantern, to travel between the center lines of a pavement, like the one in question, and deliberately maintain that position, with swiftly moving cars approaching from both directions. He may have the right so to do, but if in the exercise of this right he is placing himself in a perilous position, he must take adequate precaution to guard against injury. We can reach no other conclusion than no such precaution was taken by decedent, and it necessarily follows that he was not exercising ordinary care. We have been referred to no case where it was held that a person attempting to accomplish such an undertaking in the manner shown in this case, was exercising ordinary care.

We are constrained to hold that the plaintiff has failed to show that the decedent was in the exercise of ordinary care at the time and place of meeting his unfortunate death.

We believe the judgment of the lower court is right, and the same is hereby affirmed.

ALBERT, C. J., and STEVENS, ANDERSON, MITCHELL, KINDIG, and DONEGAN, JJ., concur.