DWIGHT A. SPOONER et al., Administrators, Appellants, v. JACOB A. WISECUP et al., Appellees.

No. 44883.

DECEMBER 12, 1939.

REHEARING DENIED APRIL 5, 1940.

Roy E. Havens and Carl V. Burbridge, for appellants.

Barton H. Kuhns and William P. Welch, for appellees.

MITCHELL, J.—United States highway No. 75 runs in a north and south direction at the place of the accident. It has been paved since 1928 and is the main highway to Sioux City. It extends on a straight and level line for a half mile to the north and for a mile to the south the view is unobstructed. It is 68 feet wide and on the middle line thereof was a paved slab 18 feet in width. From the pavement a driveway extends west into the barnyard. About 30 feet south of this, on the opposite or east side of the pavement, was another driveway extending east from the pavement into the house yard.

At chore time on the evening of December 2, 1937, as Irving E. Spooner, the man who farmed these two places, was walking across U. S. highway No. 75 from his barnyard on the west toward his house yard on the east side thereof, he was struck by an automobile driven by Jacob A. Wisecup and owned by his father, Aaron Wisecup, receiving injuries from which he died shortly thereafter. His administrators commenced this action to recover damages. The petition recites seven grounds of negligence, and in a separate paragraph they also seek to recover on the theory of the last clear chance. The defenses pleaded were a general denial and the affirmative plea of contributory negligence. At the close of the evidence the defendants made a motion for a directed verdict and also

a separate motion to withdraw the seven grounds of negligence alleged from the consideration of the jury. The lower court overruled the motion to direct, but sustained the motion to withdraw the seven grounds of negligence and submitted the case to the jury on the theory of the last clear chance. The jury returned a verdict for the defendants and the administrators of the Spooner estate have appealed.

The appellants argue strenuously that the court erred in giving instruction No. 7 which is as follows:

"7. In this case you are instructed that the undisputed evidence herein shows that the said Irving E. Spooner at the time and place in question was guilty of contributory negligence as a matter of law. Such fact will prevent his recovery in this case, unless the plaintiffs have shown by the preponderance or greater weight of the evidence in this case, that they are entitled to recover under what is known. as the doctrine of the last clear chance, the essentials of which doctrine are set out in Instruction No. 4 and concerning which you will now be more fully instructed."

The record shows that the decedent lived on this farm for better than 14 years, that daily he had crossed from the east side, where his house was located, to the west side where the barns were. That he was familiar with the crossing is conceded. That the view was unobstructed to the north for better than half a mile, a perfectly level stretch of pavement, and to the south for better than a mile. It is 25 feet from the west gate, through which Mr. Spooner passed to the edge of the pavement, and the collision occurred in approximately the center of the paved slab or 9 feet from the west edge. In other words he traveled 34 feet from the west gate to the place of the accident. There is some dispute in the record as to the exact location of the Wisecup car at the time Mr. Spooner passed through the west gate, but the most favorable to appellant's side is a quarter of a mile to the north. Mr. Spooner was a man of 66 years of age, but according to the testimony "walked pretty fast with an elastic step".

He walked through the west gate to the center of the pavement where he was injured by the appellee's car coming from the north. There is no evidence that at any time Mr.

Spooner looked to the north or to the south. Under the undisputed evidence, although it was a clear day and still light, with an unobstructed view for the entire distance that he walked from the west gate to the place of the accident, no one says that he looked to the north to see if there was an approaching auto upon this main highway.

It is the claim of the appellants however that there were no eyewitnesses and, there being no eyewitness as to whether or not he looked, there is the inference that he looked from the natural instinct of self-preservation.

So we must examine the record to ascertain whether there were any eyewitnesses to this tragedy.

One of the appellant's witnesses, Chauncey Adams by name, testified that he was working for Spooner, and that at about twenty minutes after five on the day of the accident he was coming on the highway from the south toward the Spooner place with a load of corn; that it was just getting dusk but persons and objects were visible at a considerable distance. When he was about 100 yards to the south, he saw Irving Spooner coming out of the barnyard gate on the west side of the highway and continued to watch him up until the time he was hit. Mr. Adams testified that he saw appellee's car coming from the north for better than 1,200 feet; that his view was clear. He then described in detail, that Mr. Spooner took six or seven steps to the pavement, that he walked rapidly "with an elastic step," that Mr. Spooner took four steps on the pavement and then seemed to leap in the air; that he was hit by the right front lamp and fender of the Wisecup car, that the body was hurled into the air, and located the spot where it finally landed. Here is a witness for the appellants that testifies that he watched Mr. Spooner from the time he left the west gate to the very moment that the accident occurred. In detail he tells the story, of how fast he was walking, how many steps he took, that he leaped just as he was hit, of watching the body hurl through the air, and described the very spot where it landed. That at no time did this witness see Mr. Spooner look to the north.

The purpose of the no-eyewitness rule is to establish a rule of presumption where death has resulted under such circumstances that no one witnessed just what took place, and

the presumption does not apply where there is direct evidence of the decedent's conduct.

In the case of Golinvaux v. Burlington, C. R. & N. R. Co., 125 Iowa 652, 656, 101 N. W. 465, 467, this court said:

"The doctrine seems to be bottomed on the thought that, when there is or can be no evidence regarding one's conduct in a place of danger, the instinct of self-preservation implanted in every human breast will raise an inference that he was not guilty of any negligence which contributed to or brought about the injury. But where there is direct evidence as to his conduct there is no room for this inference, for the reason that his conduct is to be judged from what he in fact did, *rather than from an inference as to what he might have done."*

In the case of Lindloff v. Duecker, 217 Iowa 326, 330, 251 N. W. 698, 700, this court said:

"Where there is evidence of what the decedent was doing prior and up to the time of the accident, the 'no eyewitness' rule does not apply. * * * The reason for the rule which has been frequently discussed by this court is absent, and therefore the rule itself does not apply."

In Sanderson v. Chicago M. & St. P. R., 167 Iowa 90, 97, 103, 149 N. W., 188, 190, the appellants were contending for application of the "no-eyewitness rule" on the ground that a witness who has testified that he saw the decedent all the time, could not say in which direction the decedent was looking. In holding that the no-eyewitness rule was inapplicable, it was stated:

"There certainly is nothing, in this record which affirmatively shows that the deceased in this case was exercising that care for his own safety which a reasonably prudent and cautious man would exercise under like circumstances and under like conditions. It affirmatively appears that deceased was well acquainted and familiar with the conditions that attended his action that morning. * * *

"As stated before, the burden of proof rests upon the plaintiff not only to show the negligence of the defendant, upon which liability is predicated, but also that the injured person was free from any negligence on his part contributing

to his injury. This burden rests upon the plaintiff at all times, and never shifts to the defendant. The absence of an eye-witness to the tragedy does not shift the burden of proof upon the defendant to show that the injured party was not exercising reasonable care for his own safety."

So in the case at bar there is direct evidence from the moment Irving Spooner left the west gate to the spot where the accident occurred, and it necessarily follows "that his conduct is to be judged from what he in fact did, rather than from an inference as to what he might have done".

█ Appellants also contend that even though Mr. Spooner failed to look and failed to yield the right of way, nevertheless the jury should have been allowed to speculate on the facts and inferences shown in the evidence as to whether or not such failure to look and failure to. yield the right of way constituted a proximate cause of the accident. It is not, of course, necessary that the negligence of Mr. Spooner be the proximate cause of the accident in order to sustain the instruction to the jury. It is sufficient to sustain the instruction that Mr. Spooner contributed directly in any way or in any degree to his injuries.

In recent expression of this rule this court said in Meggers v. Kinley, 221 Iowa 383, 391, 265 N. W. 614, 617:

"The real rule is, as many times stated by this court, if the injured party contributed in any way or in any degree directly to his injuries there can be no recovery."

In Hogan v. Nesbit, 216 Iowa 75, 79, 246 N. W. 270, 272, on this proposition this court said:

"There can be no recovery in this case if the negligence of the appellant's intestate 'contributed in any way or in any degree directly' to his injury and death. A recovery may be barred although the contributing negligence was not the proximate cause of the injury. * * * If the negligence of the injured party were a contributing cause to the injury, it will defeat a recovery although it may not be the proximate cause thereof. * * * Consequently there is a well-defined distinction between the proximate cause of an injury and a contributing cause thereto."

774

The facts and circumstances show that the decedent voluntarily placed himself in a position of danger which could be seen and appreciated. The burden of proving freedom from contributory negligence rested upon the appellant. Clearly under this record the instruction given by the lower court was right and proper.

Other errors are argued. We have given them careful consideration. The lower court submitted the case to the jury on the theory of the "last clear chance". The jury returned the verdict for the appellees. Finding no error the judgment of the lower court must be and it is affirmed.—Affirmed.

OLIVER, C. J., and RICHARDS, HAMILTON, HALE, BLISS, MILLER, and STIGER, JJ., concur.