LULU KERN, Administratrix of the Estate of V. D. KERN,
Deceased, Appellant, v. THE DES MOINES CITY RAIL-
WAY Co., Appellee.

**Appeal:** DIRECTION OF VERDICT: REVIEW. Upon reviewing a directed
verdict the appellate court will adopt that view of the case
most favorable to the unsuccessful party; and where from the
whole evidence reasonable minds may differ as to the weight
of the evidence, or inferences to be drawn therefrom, the con-
clusions will be held to be for the jury, and for the purposes of
the appeal will be resolved in favor of the unsuccessful party.

**Street railways:** COLLISION: NEGLIGENCE. The fact that a street car
was being operated at an unlawful rate of speed at the time of
injury to a pedestrian from collision. is enough to take the issue
of negligence to the jury.

**Opinion evidence:** SPEED OF CARS. A witness who has shown some
knowledge as to the speed of a street car may testify on the sub-
ject, although not an expert.

**Evidence:** *res gestae.* Statements of the motorman of a street car
regarding an accident and made immediately thereafter are ad-
missible as part of the *res gestae,* regardless of the purpose in
offering the same; and an erroneous ruling in excluding the same
will be presumed to have been prejudicial, unless, as is ordinarily
required, the successful party shows otherwise.

**Evidence:** DESCRIPTION OF INJURIES. Where there was doubt as to
how and where a deceased was struck by a street car and his
position when he was struck, a physician should have been per-
mitted to give the nature and a description of his injuries in
aid of a solution of these questions, even though the accident and
resulting death were admitted.

**Same.** Where the issues in an action for the death of one injured in
a street car accident involved a liability under the doctrine of the
last clear chance, and also the question of decedent's negligence,
exclusion of the motorman's statements concerning and immedi-
ately following the accident was erroneous, as well as refusal to
permit the physician to describe the nature and character of the
injuries; as the evidence might have had a bearing upon either or
both such issues.

Street car accident: CONTRIBUTORY NEGLIGENCE: EVIDENCE. Evidence held insufficient to show as a matter of law that deceased was guilty of contributory negligence in attempting to cross the street car track for the purpose of boarding an approaching car.

Same: PRESUMPTION AS TO SPEED. A pedestrian having observed the approach of a street car may rely on the presumption that it is not traveling at a greater rate of speed than is permitted by the city ordinance.

Same: NEGLIGENCE: ESTOPPEL. A street car company can not, through a violation of rules made for the benefit of the public, place one rightfully on the street in a perilous position and then to avoid liability for injury to him while in that position be heard to say that he did not use ordinary prudence for his own safety

Same: CONTRIBUTORY NEGLIGENCE. A pedestrian who has observed the approach of a street car is not as a matter of law bound to look a second time, but having located the same he may rely on the assumption that it will be run at the usual speed.

Same. Where a street car company negligently throws a pedestrian off his guard and puts him in peril, his conduct while in that situation will not under any circumstances be regarded as contributing to his injury.

*Appeal from Polk District Court.*—HON. JESSE A. MILLER, Judge.

TUESDAY, NOVEMBER 24, 1908.

REHEARING DENIED TUESDAY, MARCH 16, 1909.

ACTION at law to recover damages for the death of V. D. Kern, due, as is alleged, to defendant's negligence in operating its street cars on one of the streets in the city of Des Moines. At the conclusion of plaintiff's evidence the trial court on motion directed a verdict for the defendant, and plaintiff appeals.—*Reversed.*

*Gillespie & Bannister* and *Thos. A. Cheshire,* for appellant.

*N. T. Guernsey* and *Parker, Hewitt & Wright,* for appellee.

DEEMER, J.—As there was a directed verdict for defendant at the close of plaintiff's testimony, we must take that view of the case most favorable to plaintiff which

1. APPEAL: direction of verdict: review.

the evidence tends to disclose, without, of course, indicating that this is the one which should obtain upon trial by jury. All rea-·sonable and legitimate inferences which the testimony will bear must be resolved in favor of the plaintiff; and, if on the whole case reasonable minds might differ regarding the weight of the testimony or the inferences to be drawn therefrom, the conclusions are for a jury, unless, giving to the testimony its most favorable aspect, no other conclusion may fairly be drawn save the one arrived at by the trial court. We may say at the outset that we are favored with a copy of the opinion of the trial court, announced when passing on the motion to direct, from which it appears that the motion was sustained on the ground that plaintiff's intestate had not shown himself free from contributory negligence. This much for the reason that with this thought in mind the case may be better understood as we proceed.

V. D. Kern was an insurance agent, living at 1334 East Walnut Street in the city of Des Moines. He was at the time of his death 32 years of age, and had a wife and children dependent upon him. He had been troubled with rheumatism, but it is claimed had recovered before the accident in question. Grand Avenue in the city of Des Moines is one of the principal streets in that city, running from its western limits eastward past the State Capitol to the State Fair Grounds. For a part of the way on the east side of the Des Moines River the defendant, an electric street railway company, occupied this street with its tracks—the tracks being double from Twelfth to Four-

teenth Streets on that side of the river. At the crossing
of Grand Avenue with East Thirteenth Street the rails
of these tracks are four feet and eight inches apart,
and the south rail of the north track is four feet and four
inches distant from the north rail of the south track. It
was Kern's custom to take defendant's street car in going
to and returning from his home, and he almost universally
took the car at the junction of Thirteenth Street with
Grand Avenue. It was the habit and custom of the
street car company to stop its cars for the ingress and
egress of passengers at the far side of the crossing; that
is to say, it passed over the street intersections with its
cars before stopping to receive or discharge passengers.
There is an ordinance of the city forbidding a greater
speed of street cars than eight miles per hour in the
business district and than twelve miles per hour in the
residential section. The junction of Thirteenth Street
and Grand Avenue and all other places in the immediate
vicinity are in residential sections. The annual state fair
was in progress on the grounds of the society at the east
end of Grand Avenue during the last week of August of
the year 1906, and the street cars were generally heavily
loaded, and ran at frequent intervals over the tracks of
the defendant company on East Grand Avenue. The cars
and trains ran both east and west over and upon the double
tracks above described, the west-bound cars taking the north
and the east-bound cars the south tracks. East Walnut,
where Kern lived, is south of Grand Avenue, and to take
the west-bound cars he went north on Thirteenth to Grand,
crossed over the south track to the north one, and to take
the car was obliged to go to the northwest corner of the
street intersection where the cars were stopped. East
Twelfth Street is approximately three hundred and sev-
enty-five feet west of East Thirteenth, and East Fourteenth
is about seven hundred feet east of East Thirteenth. The
grade is downward from Twelfth to Thirteenth, and for

some distance eastward, from Twelfth to Thirteenth being
1.22 per cent. At or about two o'clock in the afternoon
Kern started from his home with the declared purpose of
visiting his father, who lived on the west side of the river.
He went from his home north on the east side of Thirteenth
street, came to Grand avenue, and there it is claimed saw
one of defendant's trains slowly coming from the east,
made up of the usual car and a trailer, close to the
intersection of Grand avenue with Thirteenth street. At
the time that Kern reached the southeast corner of the
intersection of these streets there was an eastbound car
at the junction of Twelfth street with Grand, three
hundred and seventy-five feet to the westward from Grand
and Thirteenth. ' A west-bound car had passed just
before Kern came to Grand avenue, and it is evident from
the entire record that Kern was intending to take the
westbound train, which was then nearing the street inter-
section when he reached the junction of Thirteenth and
Grand. He had started from home with the intention of
going to the west side of the city, had gone to the place
where he usually took the street cars, and was observed
passing from the junction of Thirteenth and Grand at the
southeast corner, northward and a little west toward the
northwest corner of these street intersections. As he
approached the tracks, the west-bound train, instead of
passing over the street intersection and stopping at the
far side thereof, stopped in the middle of the street inter-
section for some purpose, and Kern was prevented from
getting across to the north side of the north track to take
the car, which he was evidently intending to board. Just
here we find the most serious dispute in the case. On the
one hand, it is contended that there is no proof that Kern
intended to take the west-bound car, and no testimony
that he saw this car, which was now very close to the
street intersection. It is also contended, on the behalf of
the railway company, that the west-bound car was stopped

because Kern was either upon the track or close to it
and to avoid striking him.   We have set forth enough of
the record to show that a jury was justified in finding
that Kern was intending to take this train, and had
started across Grand Avenue for that purpose.   Whether
or not he saw the west-bound train which he was intend-
ing to take as he came to the street intersection was a
question for a jury, under all the circumstances disclosed,
which in part consisted of some testimony that deceased
looked in the direction of that train as he left the curb
to cross the street.

There was also testimony from which a jury might
have found that the west-bound train was stopped at an
unusual place because it had carried by some passengers
who wished to alight at Fourteenth Street east, and de-
sired to have them get off as soon as possible.   As these
were jury questions, we must assume, for the purposes
of this appeal, that they would have been resolved in
favor of plaintiff.   We have, then this west-bound car
stopping before crossing the street intersection of Thir-
teenth Street, and directly in front of deceased as he was
pursuing his way toward the northwest corner of the
street intersection.   Before stopping, the bell was rung
for the crossing, and considerable noise attended the act
of slowing down.   A jury was authorized to find that,
immediately upon the stopping of the west-bound train
in the path which deceased was pursuing, he started east-
ward to go around the latter, and that while passing along
the side of the trailer, he was struck by the east-bound
car which he had seen at Twelfth Street as he had started
to cross Grand Avenue to take the west-bound train.   This
east-bound car was running at a speed of from fifteen to
twenty-five miles an hour, and a jury may have found
that it was running at even a greater rate than the highest
here named, and that no bell or gong was sounded until
just as the car reached and ran over plaintiff's intestate.

The car was going so fast that it ran from one hundred and twenty-five to one hundred and fifty feet after it struck Kern before it was brought to a stop. There is no direct testimony that the motorman on the east-bound car saw deceased until just as it struck him; but, as no signal was given until immediately before the collision, a jury may have concluded that he did not see Kern until just as the car was about to strike him. When Kern was struck, or just immediately before that time, the west-bound train was standing, discharging passengers; but the motorman on the east-bound car paid no attention, contrary to the custom of motormen, to the fact that he was approaching a standing train from which passengers were being discharged, and did not slow down or place his car under control as he came to the standing car. All agree that Kern was struck by the rapidly moving east-bound car, and that he was run over, receiving injuries from which he died on August 31, 1906.

Little or nothing is said regarding the sufficiency of the testimony to justify a finding of negligence on the part of the defendant's employees in the operation of the two cars or trains of which we have been 2. STREET RAILWAYS: collision: negligence. speaking. It is practically conceded that there is enough testimony to support many of the specifications of negligence; and, if there were nothing more in the case than the unlawful speed of the east-bound car, this would be sufficient to take the case to a jury on the issue of defendant's negligence. Passing that point, we have the question of plaintiff's contributory negligence, or rather his freedom from such negligence, and certain rulings made by the trial court on the rejection of testimony.

Before going to the main issue on which the case was determined by the trial court we shall dispose of some of the rulings on testimony. Certain witnesses, nonexpert, it is true, but who showed some qualifications to speak

upon the subject, were asked to state how fast the east-
bound car was going.  On defendant's objec-

**3. OPINION EVIDENCE: speed of cars.**

tion this testimony was excluded.  It should
have been received.  *Van Horn v. Railroad,*
59 Iowa, 33; *Pence v. Railroad,* 79 Iowa, 389; *Cronk v.
Railroad,* 123 Iowa, 349; *Gregory v. R. R. Co.,* 126 Iowa,
232.

A witness named Jackley, who was riding on the
east-bound car, alighted as soon as it was stopped after
it had struck Kern, went to where Kern was lying, there

**4. EVIDENCE: res gestae.**

met the motorman of the east-bound car,
and immediately had a conversation with
him as to how the accident occurred.  Questions calling
for statements of the motorman in this connection were
objected to, and the objections were sustained.  They
should have been overruled.  These declarations were
clearly part of the *res gestae,* and they should have been
admitted as a part of the transaction.  *Alsever v. Rail-
road,* 115 Iowa, 338; *Fish v. Railroad,* 96 Iowa, 702;
*Christopherson v. Railroad,* 135 Iowa, 409; *Hynoven v.
Iron Co.,* 103 Minn. 331 (115 N. W. 167).  The only
argument made in support of the ruling is that, although
erroneous, it was without prejudice, because there is noth-
ing showing what plaintiff expected to prove by the wit-
ness.  This proposition, while ingenious, is without merit.
The testimony was, as we have said, a part of the trans-
action, and a material part thereof.  Plaintiff was en-
titled to show it all, and was not bound to disclose her
purpose in so doing.  Being a part of the transaction it-
self, it was manifestly material, and its rejection was pre-
sumptively prejudicial.  It was not a collateral matter,
the materiality and competency of which did not appear,
but a part of the "thing done," to which plaintiff was
entitled.  An erroneous ruling under our practice is pre-
sumed to be prejudicial, and ordinarily it is for the suc-
cessful party to show that it was without prejudice.

A doctor, who examined Kern and treated him after he was hurt, was asked to describe the nature of his wounds in ordinary language so that a jury could understand it. Objection to this was sustained on the ground that, as the injury and death were admitted by defendant, there was no necessity for going into this matter. There was some doubt about just how and where Kern was struck, and some question as to his exact position when struck. An examination of his wounds and a description thereof would certainly help to solve these problems, and the question should have been answered. There was no testimony in the case, either expert or nonexpert regarding the nature of the wounds inflicted upon Kern's body. Here again prejudice will be presumed. For defendant it is strenuously contended with reference to all of these rulings that, whilst some of them may have been erroneous, they were without prejudice, for in any event the court was right in directing a verdict, because plaintiff had not shown that her intestate was free from negligence contributory to his injury.

*5. EVIDENCE: description of injuries.*

It is also argued that, even had the rulings been the other way, the answers would have had no bearing upon the question of Kern's contributory negligence. We can not agree to this contention. True the testimony as to the speed of the east-bound car may, for the purposes of our present inquiry, be said to have been cumulative, and to have no bearing upon Kern's conduct just preceding the accident. But testimony as to the statements of the motorman immediately after the accident occurred might have had a very material bearing upon the question of Kern's conduct before he was struck by the car. It might have been sufficient in itself to take the case to a jury upon an issue presented by the pleadings, wherein defendant is sought to be held liable under the doctrine known as "the last fair chance." More-

*6. SAME.*

over this declaration of the motorman might have shown such conduct on the part of Kern as to negative the thought of negligence on his part. Again the testimony as to the nature of Kern's injuries might have had some bearing upon the question as to how, when and where he was struck. There is a suggestion in the argument for appellee that Kern was caught between the two cars, or that he was struck by the east-bound car just as he jumped from in front of the west-bound to avoid injury to himself. The case must be reversed because of these erroneous rulings, but as defendant insists that plaintiff's intestate, under the showing made, was guilty of contributory negligence as a matter of law, and that there should be no recovery in any event, we shall give some attention to that matter.

The trial court's affirmative finding upon this question was bottomed on the thought that Kern did not see the west-bound car until just as he was about to cross the track ahead of it, was not looking out for it, but on the contrary was moving across Grand Avenue without paying any attention to the west-bound car, and that, with no other thought than of the east-bound one, he voluntarily placed himself in a position of danger, either from one car or the other, or from both, and that he can not recover. This conclusion is based upon what we find to be a misconception of the record. There is as direct testimony as can be produced that defendant saw the west-bound car just after he stepped off the curb on the south side of Grand Avenue, and there is also testimony from which a jury would be justified in inferring that he saw it, and was endeavoring to cross to the northwest corner of the street intersection in order that he might board the same. His declared intent, his conduct in going to this place, and his actions after he arrived there, down to the time the west-bound car was stopped, were such as to justify the infer-

*7. Street car accident: contributory negligence: evidence.*

ence that he saw the car or train, and expected to pass behind the trailer and to board the train at the usual stopping place. Instead of stopping at the usual place, it was brought to a standstill directly in front of him, and just before it stopped the bell was rung, and other noises incident to stopping were made. When this train was stopped Kern turned toward the east to go around behind it, and while in that position was struck by the east-bound car. As the facts upon which the trial court's conclusion was based are not in accord with the record, the conclusion itself is unsound. We are constrained to hold, under the record before us, that Kern saw the west-bound car as he came to Grand Avenue, and that a jury may have found that he was crossing the street to get to the usual stopping place, expecting that the train would pass on ahead of him, and get to its customary place for receiving passengers without any danger to him from either the east or west bound cars or trains. But it is argued by counsel that plaintiff's intestate voluntarily placed himself in front of the east-bound car without taking any of the usual and ordinary precautions, and without any reasonable excuse, and for this reason that no recovery may rightfully be had.

It must not be forgotten in this connection that a jury would have been justified in finding that, when deceased started from the curb to go to the northwest corner of the street intersection he saw the east-bound

8. SAME:
presumption
as to speed.

car three hundred and seventy-five feet away and the west-bound train just a little east of the street intersection. He was justified in believing that the east-bound car would not come at a greater rate of speed than twelve miles per hour, and to act upon that assumption, so that a jury might have found that, had the two cars or trains been operated in the usual lawful and customary way, plaintiff might have passed to the northwest corner of the street intersection behind the west-bound

train and in front of the east-bound one without any danger to himself.

It might also have found that the noise and stoppage of the west-bound train at an unusual place and manner, cutting off Kern's line of travel, so disconcerted and confused him that he did not think of the east-bound one, and was by defendant's own conduct placed in such a hazardous and peculiar position as that his failure to get back off the south track or to look again for the east-bound car was excusable. A street car company can not, through its own failure to comply with its rules and customs, made for the benefit of the public, place one who is rightfully upon a street in a hazardous position, and then say that in extricating himself therefrom he did not act with that prudence which one would use under ordinary circumstances. If it created the peril, it can not be heard to say, "Well, you do not act discreetly in avoiding it." The law takes account of the impulses of humanity when placed in dangerous and hazardous positions, and does not expect thoughtful care from the persons whose lives are thus endangered.

9. SAME:
   negligence:
   estoppel.

Moreover, it can not be said, as a matter of law, that deceased was bound to look a second time for the east-bound car, even if he was blocked by the west-bound one. He had a right to assume, after having located it but a few moments before, that it would not be rushed down upon him at an unusual and dangerous rate of speed. Indeed he had the right to believe it would come no faster than the ordinance permitted. A jury might have found that had the car not been run at an unlawful and unusual rate of speed, Kern could have passed around the west-bound train and out of danger before the east-bound one would have reached him, even after he knew that he had been blocked by the west-bound train. If the case had been submitted to a jury under the record before us, and it had found

10. SAME:
    contributory
    negligence.

for plaintiff, we would not have been justified in disturbing it on account of contributory negligence. The principles, we have been discussing and the conclusions reached are so well supported by many of our opinions which have recently been filed that we need do no more than refer to them without making quotations from the language used. We call special attention to the following as being closely in point: *Perjue v. Gas Co.*, 131 Iowa, 710; *Ward v. Light & Power Co.*, 132 Iowa, 578; *Hart v. Railroad*, 109 Iowa, 631; *Doherty v. R. R. Co.*, 137 Iowa, 358.

We need not cite cases in support of the principle that where one places another in a position of peril, he has no right to expect circumspect conduct. In such circumstances it is for a jury to say whether

**II. SAME.** or not the other party acted with that thought and prescience that one placed in a dangerous position was likely to adopt, and whether under all the circumstances he was negligent. Indeed the better rule here is that, if a defendant by his own negligent acts throws one off his guard or puts him in peril, the conduct of the person placed in the perilous position will not be regarded as contributory negligence under any circumstances. See Beach on Contributory Negligence, sections 67, 68, and cases cited.

We reach the conclusion that for the errors pointed out the judgment must be, and it is, *reversed.*