MELVIN HEDBERG, Appellee, v. HOWARD W. LESTER, Appellant.

No. 43476.

DECEMBER 15, 1936.

REHEARING DENIED MARCH 12, 1937.

Halligan, Fountain, Stewart & Cless, and S. E. Prall, for appellee.

Parrish, Guthrie, Watters & Colflesh, and Watson & Watson, for appellant.

PARSONS, C. J.—This is a suit for personal injuries received by the plaintiff and caused by a truck being backed down by the defendant June 11, 1934. The parties were both employed by a

construction company in work on Highway No. 28, north of Prole, Iowa. The defendant was a truck driver hauling to a mixer on the work, the plaintiff being foreman employed by the construction company, and who was in charge of and looking after the mixer which mixed the concrete. The road was being laid in a southerly direction. The grade at that point was 5½%, that is, we take it, a fall of five and a half feet per one hundred feet; and the road was closed to public travel.

At a point about 400 feet south of the mixer the trucks drove into a prepared "turn-around", and then backed their loads along the east line to the mixer, where the load was discharged, then the truck returned empty on the west half of the roadway to the "turn-around" and back to Prole for more supplies for the mixer.

There were fifteen trucks engaged in hauling from Prole, three miles away. The trucks came in about every 85 or 90 seconds, so at the longest time each truck had about 90 seconds to back down to the mixer, unload and go back to the "turn-around". It being three miles to Prole, they had then to go back, pick up their material, and make the round again. Each truck had to load at Prole, drive three miles to the turn-around, back down to the mixer, drive out and be back at Prole ready for another load, in about twenty minutes. Plaintiff was in charge of the mixer and was foreman over the gang; he left the mixer and went up to the turn-around inspecting, in pursuance of his duties, and then turned around to come back, and while on the way back, approximately 200 feet from the mixer, defendant's truck struck plaintiff, while the truck was backing down, and plaintiff received the injuries for which suit was brought.

It is the claim of the defendant that the plaintiff was guilty of contributory negligence, which bars his recovery, and the claim of the plaintiff that on account of the instructions he had given to the truck drivers, including the defendant, these instructions constituted a rule, and a violation of these instructions was negligence; and that it was by failure of the defendant to observe the rules that the injury took place. These are practically the controlling law questions in the case.

In reference to the instructions, the plaintiff testified that he instructed Mr. Lester to drive within a foot of the side of the

forms, for the reason that the machine working on the grade would leave a little ridge of dirt, and if the truck rode on that ridge of dirt it would crowd the forms out of line, which would require more work that was not necessary; that when he started to walk back from the "turn-around" from the mixer at the time he was injured, he was about six feet from the west line; that Lester was driving a Ford truck, and it was loaded at the time, and that as he came along he would pass some men working and pass them again as they went out; that it was a down-hill grade of $5\frac{1}{2}\%$ at that particular place, from the turn-around to the mixer; and that the entire width, that is the outside width, of the trucks generally is about $6\frac{1}{2}$ feet, and the Lester truck was approximately that wide; that from the time he left the turn-around he was never in the east half of the traveled portion of the road; the east half was the side on which the trucks backed down; that he did not see the Lester truck at any time on that trip from the turn-around to the mixer, at the time of the accident; and it was not between the mixer and the turn-around at the time he left the turn-around.

On cross-examination plaintiff said the instructions he gave to Mr. Lester were oral, and were given to him on the day he went to work, and at other times while he was working. He said, "I cannot give the exact distance I told him, but I do know I told him to stay on his side of the road when backing to the mixer, and to watch men at work." The morning the accident happened, about 270 feet of concrete had been laid; and that the "turn-around" was created that morning before they started to work, and for awhile the trucks had over 600 feet to back, and at the time of the accident the turn-around was 400 feet from the mixer. The plaintiff testified that he never looked back. He said that at the time of the accident he was about six feet from the west curb and that as he left the turn-around he headed directly for the mixer; and he said at that time there was nobody, nor any truck, at the turn-around; that he went on north without looking back at any time to see if a truck was coming; and that he knew there was one coming in there every 75 to 80 seconds that morning. Plaintiff further said: "I gave instructions to the truck drivers including Mr. Lester. These instructions were to drive on the east side, or steering wheel side, to drive carefully and to watch men at work. These instructions were oral. There was no line of demarcation in the center of the road

as to dividing the east and west one-half of the road.'' He testified that the road was rough.

Another witness testified that he estimated Hedberg, the plaintiff, was about six or seven feet, something like that, from the west line of the road, and was facing the mixer at the time he was hurt; and that the Lester truck was backing up in the same direction Hedberg was facing; and it stopped after striking Hedberg in about a length of the truck; that the trucks backed from the turn-around to the skip on the east side of the roadway, and generally about a foot to a foot and a half from the east curb.

Another witness testified that Hedberg had gone about 100 feet north toward the mixer when Lester came into the turn-around, and that the truck was in the middle or a little to the west of the center of the roadway; that the west side of Lester's truck was about seven feet from the west curb line; that no signal was made.

Another witness testified that he asked Lester about the accident, and said: ''I asked him if he couldn't see or anything like that and he said he could not and he told me he was coasting down the hill.''

Harry Alexander, another witness, testified that the truck at the time of the accident was at least eight feet from the west line, and there were no trucks between him and the skip on the west side of the road; that there wasn't any signal given by Lester that he heard.

The testimony further undisputedly shows that the width of the paving when completed would be 18 feet. Preparatory to building, there were steel strips on each side of the grade, and it was 18 feet between them. The testimony shows that the trucks were 6½ feet in width. This being true, it was evident that a truck backing down the east side would have only a width of nine feet from the east line of the road under construction in which to travel; and that all of the six and a half feet would be occupied by the truck. It is not certain from the instructions claimed to have been given, just what were the orders to the truck drivers; whether he was to drive within a foot or a foot and a half of the east line, or drive simply on the east side of the road. If he drove a foot away from the east line then his truck would occupy seven and a half of the nine feet of the east half of the road. Two trucks passing, one going on the west side

and one on the east side of the road, might, within the limits of these instructions, easily have left only a three-foot space for one traveling on foot. The plaintiff, apparently familiar with the work, knowing that the road was rough; knowing that the truck had to be backed down; knowing that the trucks were going in there and going out as they were; traveled from the turn-around toward the mixer, probably 200 feet, never once looking back to see whether he was safe. Plaintiff says he was traveling on the west side; that is where the trucks would be going out; but that none were going out. He could see them coming, his danger was from the rear. This, to our minds, comes far from plaintiff having proven himself guiltless of contributory negligence. Further, the instructions did not rise to the dignity of a rule; they were too loose. The drivers were instructed to drive on the east side of the road; they were told to drive at one place within a foot of the east line, and at another place they must keep a foot and a half away from the edge. So these two questions, it seems to us, are determinative of the case.

At the close of all the evidence the defendant made a motion for a directed verdict, based upon the thought that the plaintiff had failed to sustain the allegation of negligence of the defendant; that plaintiff had failed to show that the accident was in any manner caused by the negligence of the defendant; that the record affirmatively showed that plaintiff was guilty of contributory negligence, which was the proximate cause of the accident; that the record affirmatively shows that the plaintiff was guilty of contributory negligence in not keeping proper lookout when he knew that trucks were being backed in a distance of 400 feet every 85 to 90 seconds, and that he failed to conduct himself in a careful and prudent manner at the time of the accident; that it would be the duty of the court in the event the jury returned a verdict in favor of plaintiff to set it aside, and find for the defendant, as contrary to the evidence; that the record affirmatively shows that the plaintiff and defendant were co-employees, with the plaintiff being the superior employee, and that under such circumstances the plaintiff assumed the risk of negligence of the defendant at the time and place of the accident.

This motion was made at the conclusion of plaintiff's evidence and was overruled.

The evidence for the defendant made no material difference in the facts as shown by the plaintiff. The defendant testified:

"1. The steering gear of the trucks was on the side against the forms when you were backing and we were to back no closer than 12 inches from the curb. I started to work that morning at 5:30 and I had made several trips to the mixer prior to the accident. When the accident occurred I turned my truck around and backed down slow about 3 to 5 miles an hour and about a foot away from the form line, as I was told to do. I had the door open and was looking behind by the side of my box. The box was high enough so I could not see over the box. I could not see clear behind the truck at any time.

"2. I did not at any time ever get over into the center of the road. I first knew Mr. Hedberg was hurt when Brown hollered at me. I stopped my truck, pulled the emergency break and went around and helped pick up Mr. Hedberg.

"Q. Do you know where your truck was after you parked with reference to the east curb line? A. Well, I was close enough to the form line that when I got out of my truck I stepped over the form line in getting out of my truck. When I heard Brown cry out, my truck was a foot away from the east form line.

"3. There was a cab on the truck. The top of the dump was just even with the rear window in the cab. The trucks backing downhill do not sound signals. After I heard Brown cry out I stopped my truck; I doubt whether the wheels turned over, and it was impossible for me to see through the back glass of my window. I could not see along the right side of the truck. I could see through the edge of the box about to the middle of the truck, but I could not see over on the right side."

At the close of all the evidence the defendant moved the court for a directed verdict on the record, for the reason that the same did not reveal any evidence to prove defendant guilty of negligence which contributed in any degree to the accident; and that the testimony affirmatively shows that the plaintiff was guilty of negligence as a matter of law, in that he failed to keep a proper lookout, or any lookout at all, while walking in close proximity where, to his knowledge, trucks were being backed every 75 to 85 seconds. Defendant filed a motion for new trial, setting up various grounds, which was overruled. He filed exceptions to the court's instructions, which were overruled. Ver-

dict was returned for plaintiff, and judgment entered thereon.

■■■ The record in this case conclusively shows that the trucks were backing in at the rate of 75 to 85 or every 90 sec-: onds. That would be, allowing an eight-hour day, about 340 loads from fifteen trucks, with trucks coming and going continuously. They would come from Prole, three miles away, where they loaded; they would come to the "turn-around", back down to the mixer, dump their load, and go back to Prole for another load, each truck making about 22 trips. So this meant considerable activity around where the road was being constructed. The evidence further shows that the plaintiff in coming back from the turn-around to the mixer, at the time he was hurt, never once looked back; that he knew, if they followed his instructions, at the best he would have only about three feet in which to walk; that he was facing out-going trucks; that there is no showing there was any out-going traffic interfering with his walking on the outside during his trip back to the mixer. Under the circumstances, the defendant contends that the plaintiff was guilty of contributory negligence, and that would bar his recovery.

We think, taking the whole record, including the plaintiff's own testimony, that it establishes his contributory negligence; at least, on this record, no jury could say that he had shown he was not guilty of contributory negligence, and the rule, as we understand it, goes that far; that in order for him to recover in a case of this character, the burden of proof is upon plaintiff to show that he was free from contributory negligence; that is to say, negligence that in any way contributed to the happening of the accident. As to these conclusions the defendant cites Stawsky v. Wheaton, 220 Iowa 981, 983, 263 N. W. 313, 314. In discussing this question the court says:

"The plaintiff was bound to make a prima facie showing that the deceased was not guilty of contributory negligence before she was entitled to recover. So many pronouncements have been made on this doctrine that citation of authority is hardly necessary," and then cites: Whitman v. Pilmer, 214 Iowa 461, 239 N. W. 686; Spaulding v. Miller, 216 Iowa 948, 249 N. W. 642; Sheridan v. Limbrecht, 205 Iowa 573, 218 N. W. 278; Norris v. Lough, 217 Iowa 362, 251 N. W. 646, as among the later cases in which the doctrine has been discussed.

The defendant further cites the following cases: Lindloff v.

Duecker, 217 Iowa 326, 251 N. W. 698; Sodemann v. Railway Co., 215 Iowa 827, 244 N. W. 865; Nelson v. Mitten, 218 Iowa 914, 255 N. W. 662; Taylor v. Wistey, 218 Iowa 785, 254 N. W. 50.

We think the doctrine in these cases fully supports the rule we have laid down, and necessarily disposes of the case without reference to the negligence of the defendant.

■■■ II. The trial judge discussed somewhat the effect of the violation of the rule, and said if a violation of a prescribed rule under certain circumstances and conditions becomes contributory negligence as a matter of law, it could not see why a violation of a rule under certain conditions would not constitute negligence as a matter of law.

The question arises, however, in this case, as to whether there were any rules on this job. The plaintiff's testimony certainly does not show any rule that was definite. And even if it did show a rule that was definite, the best the plaintiff could claim under it was that he had three feet, a foot and a half on each side of the middle of the unmarked road, in which to travel. But the plaintiff himself, in testifying to this rule, said in one place that he instructed Mr. Lester to drive within a foot of the steel forms, and claims this instruction was given to all truck drivers; in another place he says: ''I cannot give the exact distance, but I do know I told him to stay on his side of the road when backing down to the mixer.'' In another place he says, ''I gave instructions to the truck drivers, including Mr. Lester. These instructions were to drive on the east side, or steering wheel side, to drive carefully and to watch the men at work. These instructions were oral. There was no line of demarcation in the center of the road as to dividing the east and west half of the road.''

There is no definite rule laid down to the driver. Further, the defendant was backing down over a rough grade. At the best, he had plenty to do to keep his truck one foot from the curb, or form line. He was sitting in a car he was driving, and had to watch continually, if he obeyed instructions at all, to see that he was not getting too close to the edge. He could not be continually watching that, and watch on the other side. So if he could not do that, and he was under the necessity of getting his truck down to the mixer, keeping time with the continuous procession of trucks coming in and going out, he was told to do

the thing that was impossible, because he could not see on the west side of the truck, as defendant testified, and there was no evidence to the contrary.

While there were other questions discussed, we think this ruling disposes of the case, and that the court should have sustained defendant's motion for an instructed verdict made at the close of plaintiff's evidence and renewed at the close of defendant's evidence. So it is ordered that this case be reversed.—Reversed and remanded.

KINTZINGER, ALBERT, ANDERSON, and STIGER, JJ., concur.