Leo M. O'Meara, Appellee, v. Green Construction Company, Appellant.

No. 44506.

DECEMBER 13, 1938.

Miller, Miller & Miller, and Harold Ham, for appellee.

Huebner & Heubner, and Brunk, Janss & Bauch, for appellant.

HAMILTON, J.— ██ I. This is a law case and only errors of law are presented. There is one point and only one urged by the appellant which goes to the merits of the controversy and requires an examination of the testimony, namely, the question of plaintiff's freedom from contributory negligence. Ordinarily, the question of contributory negligence is for the jury. It is only when reasonable minds could come to but one conclusion from the facts and circumstances that the question becomes one of law for the court.

Appellant's counsel have presented this question very force-

fully, contending that, in undertaking to service the defendant's equipment, plaintiff chose an obvious place of danger when there were available other places of comparative safety where the equipment might have been serviced and, in choosing this obviously unsafe place, he assumed the risk and hazard and was guilty of contributory negligence as a matter of law and, in support of his contention, cites the following cases: Lindloff v. Duecker, 217 Iowa 326, 251 N. W. 698; Hedberg v. Lester, 222 Iowa 1025, 270 N. W. 447; Parrack v. McGaffey, 217 Iowa 368, 251 N. W. 871; Fortman v. McBride, 220 Iowa 1003, 263 N. W. 345; Norris v. Lough, 217 Iowa 362, 251 N. W. 646; and Denny v. Augustine, 223 Iowa 1202, 275 N. W. 117.

The facts and circumstances surrounding the accident in the instant case, briefly stated, are as follows: Plaintiff received the injury complained of on October 14, 1936. The accident occurred on a public highway near Guthrie Center, Iowa. Defendant, a corporation, was at the time and place engaged in road construction work. Its equipment consisted of a dragline and dump wagons towed by caterpillar tractors. Plaintiff was operating an oil and gasoline tank wagon from a City Service Oil station. He had been servicing this outfit since early in September. Usually, he filled the tanks at a time when work was shut down and the tractors were being greased which had to be done twice daily. At other times he would fill the tractors at the turn-around as the dump wagons came back from the fill empty. Part of the time this outfit worked night and day. The evening before this accident, the foreman had told the plaintiff to get out early the next morning. He arrived on the job about 7 a. m. The dragline outfit was at work. He parked his tank wagon over on the east side of the road opposite the dragline which was stationed on the west side taking dirt from the bank along the west side of the road. This dirt was hauled two or three hundred yards south and dumped on a fill. The empties would then return back north, passing by the east side of the dragline, to a place where the road had been widened out into the field adjoining to make room for these vehicles to turn around and then come back south along the east side of the dragline and get in position, under the boom of the dragline, to be again filled with dirt. There was a lot of hustle and activity with these several caterpillars and dump wagons all operating in unison and plaintiff was expected to be on hand and keep these

several tractors and dragline serviced so that no time would be lost. Everything was supposed to move like clock-work, for, as the foreman testified, "Lost time was lost money." As soon as plaintiff parked his tank wagon, on this morning, he ascertained from the dragline operator that he wanted his machine serviced. It took thirty gallons of gas to fill the dragline tank. This was carried by plaintiff in two five-gallon pails from the tank wagon across the road. While this was being done, the dragline machine was shut off. The dump wagons were still moving, one had just been filled and had moved out south and another, operated by employee Brown, was driven into position while the dragline was being serviced. There was no empty tractor at the turn-around when plaintiff had finished filling the dragline so he undertook to service Brown's tractor where it stood. He brought two five-gallon pails of gas to the left or east side of Brown's tractor, handed the funnel and one of these pails up to Brown and then crawled up onto the machine himself with the other five-gallon pail. Brown proceeded to pour the gas into the gas tank. Meantime, the dragline was started and began filling Brown's dump wagon with dirt. As Brown had about completed pouring the first pail of gas, Williams, the dragline operator, gave orders to Brown to move up so that the back end of the dump wagon could be filled. Plaintiff was up on Brown's tractor standing on the endless belt or track, which crawls along the ground when the tractor is in motion, holding the other five-gallon pail of gas waiting on Brown to finish emptying the first pail. He heard the order to move forward. He did not immediately get off of this track where he was standing which, of course, would move with the tractor. He was waiting for the empty can. Brown, upon receiving orders to move up, finished pouring the gas, handed the empty pail and funnel to plaintiff and then "whirled around in his seat and jerked his tractor into gear."

Plaintiff testified, in substance, that when he heard the order to move up, "I knew they were going to move it." He didn't remember any fender or guard rail. If there was one he probably would have had time to get onto it but thought all he could do was to step down. There was room in the seat but he said he would have had to step over the driver.

"Q. You knew that if Brown's tractor started up this

track would move? A. Yes, but there was no reason for him to start. * * * I heard the order to move up and I knew if I remained standing on that track that the track would move. * * *"

"Q. You knew that there was room so that you could have stepped down on the ground, you knew that didn't you? A. If I had had time, yes. But you see I didn't have much time to do anything. * * * After the order to move up was given Brown had to turn around and put the cap on the gas tank and he also had to throw it in gear but that only took a minute. I stayed waiting for Brown to empty the pail. It was just a second or two. He hadn't moved yet and I didn't know know he was going to move so quick. A man could have stepped down if he had time enough to do it but I had a full five-gallon can in my hand and that loaded me down a little. * * * I waited for Brown to finish emptying the first can. Then I don't think I would have had time to step down before he moved because he whirled right around and threw it in gear. At any rate, I didn't get down. I started to and that other man was behind me and I couldn't. I would have stepped in the path of the other caterpillar. It was right behind me. I don't know, I suppose it was the dump wagon that hit me. All I know, I was standing on that thing when he whirled around and I was hunting a way to get down when I took a flip over in the road. The driver of the other tractor was right even with me as I looked over my shoulder. He was just going by when it all happened. It all happened at once. The cat had gotten by me but the dump wagon had not. The tractor started with a jerk. I didn't have time to tell Brown to wait. I didn't see the other tractor until I started to get off. It was then right behind me. I don't know how fast it was going. They sometimes go as fast as 8 miles an hour. They are always hurrying up. I was always in a hurry. They wanted me to hurry. They didn't want me to take too much time or stop the works. I have stood on tractors at other times but always before I had time to get down and leave and then they would start."

Brown explained his actions by testifying that O'Meara, the plaintiff, told him to go on down to the dump and he would finish servicing him when he came back; that he hadn't moved the tractor but was merely getting ready to when he looked

around to see how his load was and saw plaintiff sitting on the bank holding his foot. Two witnesses, who talked with plaintiff at the time of the injury, testified that plaintiff said he slipped and stumbled; that no one was to blame. Plaintiff, in rebuttal, denied making these statements, but, upon being pressed with further questioning, admitted that he was in considerable pain and might have made some of the statements but did not think he had made them.

We are of the opinion that the question as to whether or not plaintiff acted as an ordinarily prudent person was a question for the jury. It must not be lost sight of that in the cases cited by appellant, bearing on this question, the instrumentalities were not all under the control of one party. In this case, plaintiff was up on the tractor that was being serviced out of the way of the traffic, Brown was assisting him; Williams, dragline operator, knew what they were engaged in doing as did the driver of the empty tractor that ran over plaintiff's foot. It is not reasonable to say that O'Meara did not have a right to expect that these employes of the defendant, knowing of his peril in the event the tractor was moved, would pause, after the orders had been given to move up, to give him time to get down and out of danger. The underlying weakness of the able argument of appellant's counsel lies in the fact that it is based on the unreasonable assumption that O'Meara knew or, in the exercise of reasonable care and caution was bound to know, before he ever started to fill Brown's tractor that, when the orders were given to move up, the employes would obey instantly and drive the tractor on which he was standing out from under him and that, if he got up on said tractor, he did so at his own peril. In other words, that this defendant, like time and tide, would wait for no man. We cannot approve of this extreme view taken by appellant's counsel. By suddenly, and without sufficient time for plaintiff to alight, moving the tractor with a jerk, the defendant created the danger placing the plaintiff in peril and it is in no position to urge that plaintiff did not use good judgment in extricating himself therefrom. Under the circumstances, defendant had no right to expect circumspect conduct. Kern, Admx. v. Ry. Co., 141 Iowa 620, 118 N. W. 451, and Lundien, Admx. v. Ry. Co., 166 Iowa 85, 147 N. W. 308. We have no fault to find with the principles of law announced in the cases cited by appellant to the effect that one choosing an obvious

place of danger is negligent as a matter of law and assumes the risk incident thereto. No two cases are exactly alike and before the rule contended for by appellant can be made applicable in the instant case we must find that it was obvious to the plaintiff that the company was so set on conserving time that if he happened to be on one of those tractors at a time when the order was given to move forward they would move regardless of his presence on the tractor. Under the facts in this case, the verdict of the jury is so manifestly reasonable and fair that the interests of justice do not require that we strain and stretch any principle of law to make it cover the facts.

■ II. The negligence charged and which was submitted to the jury was as follows:

"That at said time and place that plaintiff in the course of plaintiff's delivering said oil and gasoline was upon or about a tractor operated by the defendant and an employee of the defendant carelessly and negligently caused said tractor to be moved in such a manner that plaintiff was thrown into and under the wheels of a dirt wagon operated by another employee of the defendant which was so negligently operated as to cause said dirt wagon to pass over the body and person of the plaintiff."

Appellant asserts that the allegation of negligence is too general and indefinite under established rules of pleading and that the motion to withdraw the same from the consideration of the jury and to direct a verdict for defendant based on the same ground, viz., indefiniteness, should have been sustained. In support of this contention, appellant cites and relies on Cooley v. Killingsworth, 209 Iowa 646, 228 N. W. 880, and Lang v. Siddall, 218 Iowa 263, 254 N. W. 783. In each of said cases, certain allegations were held too general and indefinite. Appellant asserts that the allegation in the instant case is "every bit" as general and indefinite as those condemned in the cited cases. Of course, it is not possible or practical to lay down any inflexible rule in matters of this kind.

■ Every case must be considered in the light of the peculiar facts and circumstances out of which the cause of action arises. When we give fair consideration to the facts and circumstances in each of these cases, we are unable to agree with

the comparison made by appellant of the charge of negligence in the instant case with those condemned in the cited cases.

While the charge of negligence includes two concurring acts of different employees, the negligence charged is against the defendant and not the employees. It is one entire charge of negligence as to the employer, the corporation defendant. Plaintiff's right to recover did not necessarily require proof of negligence on the part of both employees. Proof of negligence on the part of either or both employees, proximately causing the injury, was sufficient to make a case against the defendant.

In submitting the issues, the court, as a part of Instruction No. 6, stated:

"You are instructed that if you find by a preponderance of the evidence that the defendant through its employees did not exercise reasonable and ordinary care in the operation of the tractor on which the plaintiff was standing, or failed to exercise reasonable and ordinary care in the operation of the dirt wagon which passed over the plaintiff's ankle and foot, then and in that event, the defendant would be negligent."

It is the contention of the appellant that the evidence was not sufficient to warrant the jury in finding want of reasonable and ordinary care in either of the respects mentioned in the foregoing instruction and especially on the part of the driver of the dirt wagon which ran over plaintiff's foot. As we have heretofore indicated, the charge of negligence is against the corporation not against the employees. It is to be considered as if this corporation, personified, held in its two hands at the same time these two tractors which were instrumental in bringing about the injury. As it negligently jerked into gear Brown's tractor throwing plaintiff into the road, at the same time and as a part of its own conduct, it drove the other empty tractor over the plaintiff's foot; with the negligent act of one arm, defendant threw the plaintiff onto the ground, and by the negligent act of the other arm, drove this tractor over his foot. The defendant cannot be permitted to say, "my employee Brown might have been negligent in throwing plaintiff into the path of the oncoming tractor but my other employee was exercising due care, and therefore, the accident was unavoidable" and thus escape liability. In the instant case, if this defendant, through its employee Brown, was going to negligently move his tractor

with a jerk and throw this plaintiff into the road, it was equally negligent for defendant to provide and have in operation another vehicle driven, by another employee, at a time and place and in such a manner as to form a trap in which to catch and injure the plaintiff as he fell. As bearing on this question, see: Kraut v. Ry. Co., 160 Pa. 327, 28 A. 783; Newcomb v. Ry. Co., 182 Mo. 687, 81 S. W. 1069; Hild v. St. Louis Car Co., Mo. App., 259 S. W. 838; Carr v. St. Louis Auto Supply Co., 293 Mo. 562, 569, 239 S. W. 827.

True, the jury might have found that plaintiff slipped and stumbled off the Brown tractor and that this was through no fault of defendant and that, in such event, there could be no recovery unless the operator of the empty tractor failed to exercise reasonable and ordinary care in the operation of said tractor for in such event the accident would have been unavoidable. The issue, that this was an unavoidable accident, was submitted to the jury and it found against the defendant. So the matter resolves itself into this: That if there was evidence that the defendant did not exercise reasonable and ordinary care in either of the respects mentioned in the Instruction No. 6, above quoted, a verdict for the plaintiff was warranted. We are of the opinion the allegations were sufficient to state a cause of action and the proof sufficient to take the case to the jury.

III. The last assignment of error is against the court's instruction defining evidence as follows:

"'Evidence' is whatever is admitted in the trial of the case as a part of the record, whether it be an article or document marked as an exhibit, or other matter formally introduced and received, a stipulation, or the testimony of the witnesses, in order to enable the jury to pronounce with certainty concerning the truth of any matter in dispute."

Appellant takes exception to the following portion of said instruction:

"* * * in order to enable the jury to pronounce with certainty concerning the truth of any matter in dispute."

Counsel for appellant, in their written brief, state: .

"* * * whether evidence will enable a jury to determine the very truth of a matter in dispute to a certainty or other-

wise is not the test or criterion for determining what constitutes evidence. * * * What is really wrong with said instruction is that it assumes the function and objective of a jury is to pronounce with certainty concerning the truth of the matters in dispute. If juries never returned a verdict until they were able to pronounce with certainty concerning the truth of the matters in dispute hung juries would be the rule and very seldom, if ever, would a verdict be returned."

We are not approving or disapproving the efforts of the trial court in attempting to define evidence but we are of the opinion that the interpretation which appellant gives to this instruction, describing and enumerating the different matters which constitute evidence, is rather severely strained. Properly analyzed, the court said "evidence" is *whatever* is admitted in the trial of a case as a part of the record (such as exhibits, or other matters introduced and received, a stipulation or the testimony of witnesses) *the purpose of which is* to enable the jury to pronounce with certainty the truth of any matters in dispute. (Italics ours.) It is appellant's contention that this last phrase limits or restricts the jury to a consideration of only such of the matters constituting evidence as would enable the jury to pronounce with certainty the truth of any matter in dispute. The language of the court fairly interpreted can mean no such thing. The jury would understand, as we understand, that all the court was attempting to do was, in a general way, to point out to them what he meant when he used the word "evidence" in the instructions. He meant those matters and things which he described and which were a part of the record of the trial. The court was not talking about the degree of proof. Instructions, of course, are to be read in their entirety. In other instructions dealing with the burden of proof, the jury was told what was meant by preponderance of evidence and that the burden was on the plaintiff to establish all the essential allegations of the petition by a preponderance of the evidence and among other things the court said to the jury:

"You are to try and decide this case according to the law as given you in charge by the court in these instructions and the evidence produced and submitted to you in open court, taking into consideration all the facts and circumstances as disclosed by the evidence, as well as the lack or want of evi-

dence, if any, and you will consider all fair and reasonable inferences and deductions which may be drawn from the evidence.''

The instruction given, when considered with all other instructions, could not have misled the jury to the prejudice of the appellant. Perhaps it would be better to strike the words ''pronounce with certainty concerning the'', and substitute in lieu thereof ''to arrive at the very.''

IV. The writer of this opinion frankly confesses the record does present one puzzling question. Here it is: Plaintiff's allegation of negligence, while sufficient as a general allegation if not attacked, was at least of doubtful precision if attacked by motion for more specific statement. Defendant did so attack such petition and the court sustained the motion.. Plaintiff then filed an amendment and reiterated the very same ground of negligence, in almost identical language, with an additional averment to the effect that all the instrumentalities were under the exclusive care, control, and management of the defendant and that, by reason of the facts and circumstances, defendant was negligent in the premises and such negligence was the proximate cause of the accident. Thus, apparently, attempting to frame his pleading for the application of the doctrine of *res ipsa loquitur*. A second motion, double-barreled, to strike and for more specific statement, was filed attacking this amendment. At the time this motion was submitted, counsel for plaintiff stated, so the abstract recites, that he was relying on *res ipsa loquitur*.

The trial court overruled the second motion generally thus reversing himself, the former motion having been sustained. Why he did this is not shown by the record. We might surmise, in fact, we do surmise, that the court changed his ruling because of the statement of counsel for appellee that he was relying on *res ipsa loquitur;* in fact, counsel for appellant asserts in argument that this was the basis of the court's ruling. If we should adopt this theory, where would this leave the appellant? It could not stand on its motion and take an appeal because if the pleading were such as to make applicable *res ipsa loquitur* the motion was properly overruled and an appeal would be of no avail. Without doubt, this record discloses a change of front on the part of appellee for he now contends that the allegation of negligence is a double-header or an allega-

tion of two concurring causes, the first of which, in so far as employee Brown is concerned, is a specific allegation and the second, in so far as the employee driving the empty dirt wagon is concerned, is a general allegation. It may be the court was misled but there is nothing in the record to indicate that such was the case. While we do not doubt the word of counsel, we deem it the better course to take the record as we find it. The trial court must interpret the pleading where there is a dispute and must determine from the averments of the petition and not from statement of counsel whether *res ispa loquitur* is applicable. If the court had taken the statement of appellee's counsel as true and had actually submitted the case in accordance with the interpretation placed upon the pleading by appellee, this would preclude appellee from questioning the propriety of such submission but such is not the case. It may be that he overruled the defendant's motion on that theory. This we do not know. We do know the court did not submit the case on such theory. And it is our conclusion that the pleading and proof did not warrant a submission on such theory.

▮ However, counsel for appellant was not misled for he has always contended and still contends that the allegation was not such an allegation of general negligence as would warrant the court submitting the case on the theory of *res ipsa loquitur* but has always contended that it is a specific allegation of negligence too general and indefinite in form to constitute the basis of a cause of action for negligence on any theory. This being true, we think the only way appellant could have preserved its legal objection would have been to have stood on its motion and taken an appeal. Failing to do this and by filing an answer, it waived the error of the court in overruling the motion. Broderick v. Barry, 212 Iowa 672, 237 N. W. 481, 75 A. L. R. 1530. The office of such a motion is to compel the pleader to state his cause of action in language sufficiently precise to enable the defendant to meet the evidence and prepare his defense and if compelled to go to trial under allegations which do not meet the legal requirements as to precision there is nothing he can say in his answer or by any other method of attack that will supply or provide the necessary information sought to be obtained by filing a motion for more specific statement. The only remedy is by standing on the motion and taking an appeal.

Some of the questions raised are very difficult of determina-

tion; they are, likewise, quite technical. But on the whole, aside from the one question of contributory negligence, they do not present matters affecting to any great extent the substantial rights of the parties. That is to say, had everything been done that appellant contends should have been done in the way it says it should have been, it is not likely the evidence or the verdict would have been changed one iota. From a perusal of this record, it would be absurd to say the defendant did not have an opportunity to and did, in fact, present every fact and every proposition of law which in anyway could aid the defendant in preventing a verdict against it. It must, on the other hand, be said that astute counsel for appellant not only apprehended all there was to apprehend but, likewise, was able to and did prepare and present its defense in an exceedingly masterful way. We feel it would be impossible for even the able advocate who represented appellant before this court to put his finger on anything really prejudicial to his client except the verdict of the jury. Substantial justice has been done and after all this is what courts are organized for, and not, primarily, to provide a forum to test the skill and agility of learned counsel in up-tripping his adversary. We are not criticizing counsel, we must commend the almost Herculean efforts put forth by counsel, on both sides, in behalf of their clients. We do not commend the change of front on the part of appellee and are loath to allow counsel to get by with it, but, what we have already said concerning this matter seems to us to be the only practical solution.

No reversible error appearing, the case must be and is accordingly affirmed.—Affirmed.

SAGER, C. J., and DONEGAN, ANDERSON, KINTZINGER, and MITCHELL, JJ., concur.