JACK WAMSER, Appellant, v. SAM BOSTIAN et al., Appellees.

No. 45513.

JUNE 17, 1941.

REHEARING DENIED SEPTEMBER 19, 1941.

Jordan & Jordan and Willard F. Russell, for appellant.

Reed & Beers, for appellees.

SAGER, J.—On August 7, 1937, appellee Kent, a man forty-eight years old, was driving a truck containing a concrete "mix" on a construction job near Belle Plaine in this state. Appellant's duties are thus accurately described by appellees:

"His job as his testimony shows, was that of a grade checker. That means that it was his job to see that the grade was the proper height so that the correct amount of cement could be poured between the forms which had been set. He was working between the turn-around and the mixer in the space over which the trucks loaded and drove away empty. He determined whether the grade was right or wrong by pushing into the ground in the grade a stick with a nail driven into it. The distance between the nail and the top of the stick was the depth the concrete was to be. After pushing the stick into the ground to the nail he then went outside the form and sighted across the top of the form and across the top of the grade stick to the opposite form to be sure that there was the proper level. The squatting and the sighting was all done outside the form. The only time he needed to be on the grade between the forms was when he went out to set his grade stick and when he went out to retrieve it. In this case he had set his grade stick. He had gone outside the form on the south side and squatted and made his sight and was then returning to the grade to pick up his grade stick."

At this moment appellant was struck by the truck driven by appellee Kent. The record discloses that there were in the neighborhood of thirty-five trucks delivering concrete mix to the mixer. They came from the west to what was termed a "turn-around"

located approximately 300 feet west of the cement mixer. When the trucks came to this turn-around which was in the nature of a Y, they turned to the north, backed out and backed eastward to the mixer where they deposited their load. To the west of the mixer and at and about the place where appellant was hurt, there were ten or a dozen men engaged in the various activities incident to laying the pavement. The mixer could mix a batch every seventy-two seconds and drop the load in seventy-two more. Each of the trucks was making about two trips an hour.

Appellant testified that for some cause, possibly trouble at the mixer, operations had ceased temporarily while trucks gathered to await resumption of operation. The nearest truck to him was that of Kent which, he said, was about thirty-five feet away. Kent could not see anyone immediately behind his truck although he could have seen appellant from a distance of 125 feet. Appellant's claim is that while the mixer and the trucks were at a standstill he attempted to retrieve his stick, when appellee Kent, without sign, warning or signal of his intention of doing so, suddenly backed his truck. Kent testified that he did not see appellant and was not aware of his presence until some shout or call warned him that an accident happened.

It is the contention of the defense that there was no stoppage of the movement of the paving gang; and that in the continuous flow of trucks to and from the mixer, appellant was under obligation to look out for himself and keep out of the way of the trucks. The jury could find that Kent made no attempt to see where the workmen ahead of the mixer were, but concerned himself largely if not entirely with avoiding damage to or the displacement of the forms into which the concrete was to be poured. He had the door of his truck open, holding it with his left hand while guiding the backward movement of the truck to the mixer. He wouldn't say that he had sounded the horn and appellant says no signal was given.

It will thus be seen that the trial court was confronted with the question of determining whether as a matter of law the plaintiff was guilty of contributory negligence, or appellees free from negligence. The court took the view that it was a law question in that under the record reasonable minds could not differ.

A verdict was accordingly directed as already stated. Herein we think the court erred.

Both parties cite Rebmann v. Heesch, 227 Iowa 566, 288 N. W. 695, reading it to different conclusions. The case is so nearly parallel in its facts with those at bar that the opinion there might well have been written in this. There is this difference to be noted. In the Rebmann case the truck driver struck the plaintiff on the side of the road upon which the trucks on that job were not accustomed to be. The driver sought to justify his position by various obstacles in his way as he moved to the mixer. The opinion supports the contention of appellant here and seems to us controlling. Appellees also cite these cases which are distinguishable:

Hedberg v. Lester, 222 Iowa 1025, 270 N. W. 447; Denny v. Augustine, 223 Iowa 1202, 275 N. W. 117; O'Meara v. Green Const. Co., 225 Iowa 1365, 282 N. W. 735; Cumming v. Dosland, 227 Iowa 470, 288 N. W. 647; Spooner v. Wisecup, 227 Iowa 768, 288 N. W. 894; Ward v Zerzanek, 227 Iowa 918, 289 N. W. 443.

One of the grounds for motion to direct was that the evidence failed to show that Kent was an employee of Bostian operating the truck in the scope of his employment, and failed to show that Bostian was liable for the negligence of Kent. Under some state or federal regulation, or both, no man was allowed to operate a truck for more than forty hours a week but the owner of the truck was permitted to engage relief drivers, none of whom might work more than forty hours per week. The method of employment by the construction company is thus described by one of its officers:

"The owner selected his own driver and that driver could drive the truck forty more hours in a week. The relief driver and the truck owner were paid as individuals by check and the truck owner was paid as the owner of the truck. So that when a relief driver was operating a truck the number of loads that the relief driver hauled would be paid by check and would be divided between the relief driver and the truck owner."

Kent was operating Bostian's truck under this sort of an

arrangement. A truck driver employed on the same job at the same time testified:

"The Sani [construction company's] man did not hire us. The truck owners hired I and Kent. The relief drivers are kind of engaged among themselves, working for them more than they are working for the paving company, but the Sani Construction Company paid us our checks, but these other fellows that owned the trucks were what we called the 'boss' and so was Sani as far as that goes and we had to take orders from either one of them."

Under such a record it would seem to be unnecessary to discuss the question whether the relationship of appellees, one to the other, was master and servant or as engaged in a common enterprise. Certainly Kent could not be regarded as an independent contractor.

Our attention is called to section 264, chapter 134, acts of the Forty-seventh General Assembly (Code, 1939, section 5017.06), which provides:

"Road workers exempted. The provisions of this chapter shall not apply to persons, teams, motor vehicles and other equipment while actually engaged in work upon the surface of a highway but shall apply to such persons and vehicles when traveling to or from such work."

As was pointed out in the Rebmann case, supra (227 Iowa 566, 288 N. W. 695), this provision of the statute does not serve to excuse negligence on a job of this kind. We have frequently held that every person is bound to exercise that degree of care which a reasonably prudent person would exercise under the circumstances as they were, or as they might to such prudent person reasonably appear to be, unless statutory or other governmental regulation prescribed a different rule of conduct.

On the whole record, while recognizing that we are dealing with a borderline case, it seems that a jury could just as well decide upon the fact question as can the court. We think there was error in the ruling sustaining the motion to direct.

The motion to dismiss this appeal has been considered and found wanting. It is overruled.

The case is, therefore, reversed.—Reversed.

CHIEF JUSTICE and all JUSTICES concur.